## HOPSON *v.* THE STATE.

1. Where a dealer in one county receives from a person in another county an order for goods, and ships the same to an agent of the dealer in that county to be delivered to the person sending the order, and this is accordingly done, the sale is consummated in the latter county ; and this is so though the person ordering the goods pays for them in advance and his name is marked on the package containing them when the same is shipped to the dealer's agent.
2. Recalling a jury in a criminal case who had retired to consider of their verdict, and, in the absence of the accused and his counsel and without their consent, giving a second charge, is cause for a new trial, even though this charge be the same, in substance, as that which has been delivered in the first instance.

Submitted July 21, — Decided August 7, 1902.

Indictment for selling liquor. Before Judge Spence. Brooks superior court. June 14, 1902.

*W. S. Humphreys* and *S. S. Bennet,* for plaintiff in error.
*W. E. Thomas, solicitor-general,* and *L. W. Branch,* contra.

LUMPKIN, P. J. 1. The indictment charged H. G. Hopson with selling spirituous and intoxicating liquors in Brooks county. There was sufficient evidence to establish, among others, the following facts: Gornto and J. W. Hopson, as partners, were engaged in selling such liquors at Valdosta, in the county of Lowndes, and the latter had a store in Brooks county in which H. G. Hopson was employed as a clerk. Several persons residing in Brooks county sent by mail orders to Gornto for whisky, in each instance enclosing with the order a remittance covering the price of the liquor desired. These orders were filled by expressing the liquors to J. W. Hopson, who informed the purchasers of the arrival thereof, and they called upon and received the same from H. G. Hopson. The name of each purchaser was upon every express package designed for him, but the shipments were, as stated, made to J. W. Hopson. A regular and systematic business, the nature of which was fully understood by H. G. Hopson, was conducted on the plan indicated above.

1. It is plain that none of the sales were completed in Lowndes county ; for in no instance was there in that county a delivery of the liquor to the purchaser. Had the shipments been made directly to the purchasers, the case would have been different; for delivery to the carrier would have been, in legal contemplation,

delivery to the purchasers.   As it was, the seller did not ship to the persons who ordered the liquors, but to his own agent; and the agent, through H. G. Hopson, made the deliveries.   The latter was not acting ignorantly, but knew exactly what he was about.   The facts that the liquors ordered were paid for in advance, and that each purchaser's name was placed on the packages intended for him, do not alter the case.   For reasons of their own, the sellers, Gornto and J. W. Hopson, did not intend to make, and did not make, any deliveries in Lowndes county; and that is the vital point. It does not distinctly appear, but the testimony as a whole is pregnant with the suggestion, that the mail orders to Gornto were sometimes filled with greater celerity than could be accomplished by the usual course of mail and express.   Be this as it may, the evidence fully warranted the finding of guilty against H. G. Hopson; and the charge of the court being in substantial accord with the law applicable to the facts proved, there is no merit, either in the general grounds of the motion for a new trial, or in that in which exception is taken to the instructions given to the jury.

2. We are, however, constrained to order a new trial upon another ground of the motion, which complains that, after the court had charged the jury and they had considered the case for some hours, the judge, in the absence of the accused and his counsel, and without any effort to bring them into court, gave to the jury a second charge which was substantially the same as that which had been given before they retired in the first instance.   This practice can not be upheld.   See *Wade* v. *State*, 12 *Ga.* 25; *Martin* v. *State*, 51 *Ga.* 567; *Bonner* v. *State*, 67 *Ga.* 510; *Wilson* v. *State*, 87 *Ga.* 583; *Tiller* v. *State*, 96 *Ga.* 430.   There was no waiver of the right of the accused and his counsel to be present when the second charge was given.   It does not appear that both were ignorant of its being given until after the trial had ended; but this makes no difference.   It is an inevitable conclusion from the cases cited above that the accused may complain of such an irregularity after verdict, notwithstanding knowledge thereof by him or his counsel while the trial was in progress.   Nor does the fact that the "recharge" was, in substance, the same as the original charge dispense with the necessity for ordering a new trial. The great point is that the accused and his counsel have the right to be present at every stage of the proceedings and personally see

and know what is being done in the case.    To say that no injury results when it appears that what occurred in their absence was regular and legal would, in effect, practically do away with this great and important right, one element of which is to see to it that what does take place is in accord with law and good practice.

*Judgment reversed.    All the Justices concurring, except Lewis, J.; absent.*