## 6122.  McCURRY *v.* CITY OF ROME.

1. There was sufficient evidence to warrant the conviction of the accused.
2. As to the exception which relates to the presence of the city attorney and the chief of police in the council chamber, and the question put to the chief of police and answered by him in the absence of the accused, while the mayor and council were deliberating as to the judgment to be rendered, the case is controlled by the decision in *Smith* v. *City of Rome,* 16 *Ga. App.* 161 (84 S. E. 615).

DECIDED SEPTEMBER 22, 1915.

Certiorari; from city court of Floyd county—Judge Wright. October 16, 1914.

*John W. Bale,* for plaintiff in error.

*Max Meyerhardt,* contra.

WADE, J.  There is no merit in the contention that the conviction is not supported by evidence; and as to the remaining question in the case the facts are identical with those in *Smith* v. *City of Rome,* 16 *Ga. App.* 161 (84 S. E. 615), in which it was held: "Where, on a trial by the mayor and council on appeal, in the case of one who had been convicted by the recorder of the city of the charge of having violated a municipal ordinance, the evidence and the defendant's statement had been received and the hearing of the case concluded, it was not error to exclude the accused from the court-room during the deliberations of the mayor and council as to the judgment to be rendered.  Nor is it sufficient ground for a new trial that the city's attorney, who had conducted the prosecution, and the chief of police, who had aided and advised him in the conduct of the trial, were allowed to remain in the court-room while the accused was excluded, it appearing that neither of these officers took part in the deliberations of the mayor and council, though the chief of police, at their request, informed them as to the amount of the fine imposed in the recorder's court.  If this communication, or the presence of these officers, in the absence of the accused, was an irregularity, it does not appear that it resulted in harm to him. The right of the accused to be present at his trial does not include the right to be admitted to the consultations of the members of the court with each other while they are deliberating as to the judgment to be rendered.  The mayor and council were sitting as a court, and not as a jury (*Flannigan* v. *City of Rome,* 10 *Ga. App.* 217, 72 S. E. 1099) ; and the case is not governed by decisions awarding a

new trial on account of communication between jurors and others during the deliberations of the jury."

The law has never subjected courts or judges to such requirements as those which forbid or restrict communication between jurors and others during the trial or consideration of cases; and, though communication between a judge and counsel or a party, not in the presence of the opposite party or his counsel, in regard to a case under consideration by the court, may be matter for criticism, or in some instances highly improper, it is incumbent upon a party by whom a judgment is attacked for alleged impropriety or unfairness in this respect to show that the conduct complained of was harmful to him. This is so without regard to whether the court was a municipal court or a higher tribunal, and although the judgment was a finding of fact, and the court in rendering it was therefore exercising a function like that of a jury.

Certainly it can not be held that the mere presence of the city attorney or of the chief of police in the council chamber, even though the accused was absent, was prejudicial to him. And it is not apparent that the accused was harmed, or could have been harmed, by the question and answer as to the amount of the fine imposed on him on the former trial of the case.

*Judgment affirmed.*

RUSSELL, C. J., dissenting. The case of *Smith* v. *City of Rome,* supra, though differing somewhat in its facts, presented the same questions involved in the present case. When that case was decided I was compelled, because I did not have the time to express my reason for dissenting from the judgment of the majority, to be content with merely having myself recorded as dissenting. In *Smith's* case the guilt of the accused was, to my mind, manifest. In the present case the defendant, by the testimony of several unimpeached witnesses, proved a complete alibi. The only witness against him was a private detective, furnishing testimony for compensation. Of course, it was within the prerogative of the mayor and council before whom he was tried to prefer the testimony of the witness for the city, and the principle that a witness may testify for compensation and still be credible is well recognized. So that the plaintiff in error has no legal ground for complaint based upon the insufficiency of the evidence. And while in that respect the case is similar to that of *Smith,* and the merit of the writ of error

is restricted to the point considered in *Smith's* case, still, in view of the difference in the testimony in the two cases, as well as the importance of the legal point involved, I am unwilling to refrain from expressing the reasons which constrain me to conclude that the defendant did not have such a fair and impartial trial as is guaranteed him by law.

The defendant was tried before the mayor and council. He was represented by an attorney. The city was represented by the city .attorney. When the testimony closed, the defendant and his counsel were ordered to retire from the room in which the trial was being had, and the petition for certiorari states that the mayor and council went into "executive session," and that the city attorney and the chief of police remained in the same room, and a policeman was at the door to keep out intruders. The answer of the municipal court does not verify the statement of the petition for certiorari that the city attorney presented the facts of the case to the mayor and council after the defendant and his counsel had been sent from the room, or that the character of the defendant was discussed before the mayor and council by the city attorney. On the contrary, it is stated in the answer that the city attorney said nothing during the consideration of the case by the mayor and council, and that the chief of police made no utterance except to state the amount that the defendant had been previously fined by the recorder. To my mind it is immaterial.that the city attorney said nothing and that the chief of police stated only the amount that the recorder had previously fined the defendant. Neither the city attorney nor the chief of police should have been present during the determination by the mayor and council as to the guilt or innocence of the accused, unless the defendant and his counsel had likewise been present. If the trial had not been concluded, the defendant and his counsel were entitled to be present. If the trial was so far complete that nothing remained but to reach and formulate a conclusion of the municipal body trying the case, then it was not only proper to exclude the defendant and his counsel, but the city attorney and all persons other than the triors should have been excluded, and the mere presence of the prosecuting attorney during the formulation of the finding or judgment was, upon grounds of public policy, so contrary to the spirit of our institutions and so charged with the probability of hurt to the accused that it must be presumed to be

prejudicial. The statement in *Flannigan* v. *City of Rome* (supra), that "the council was not sitting as a jury, but as a court," was not intended to be a holding that the same disqualifications would not apply to members of the city council as would apply to a jury, or that less care should be observed in seeing that the rights of a defendant were guarded before one tribunal than before another. While, of course, many of the rules applicable to the selection and qualifications of jurors can not be applied to the members of a city council, it is none the less true that in the exercise of the prerogative of passing upon questions of fact, they occupy the same position, and that in solemnly adjudging the guilt or innocence of one accused of a violation of law, their finding should be, like Cæsar's wife, above suspicion. Especially is this true at this time, when in the larger cities of the State a large majority of petty offenders are tried in municipal courts, and frequently are subjected to extremely heavy penalties.

Knowing as I do the learned member of the bar who was city attorney in this case, I could not believe that he would consciously do any act that would tend to lower the highest standards of our noble profession; and doubtless the chief of police is a gentleman of the highest character; and yet I am unwilling to hold that the presence of the prosecuting attorney and of the head of the municipal police department is not likely to influence unconsciously members of the municipal council with whom they are daily associated as colaborers, so that their very presence would throw the weight of an imperceptible influence into that scale which is "rarely rightly adjusted" when "self the wavering balance shakes." The books are full of decisions in which judgments have been reversed because the inviolable privacy of the jury was invaded, when, so far as was apparent from the record, no injury resulted to the complaining party; this upon the principle of a sound public policy, that where there is an opportunity for injury to the losing party, error and injury will be presumed. In passing upon the *Smith* case my colleagues considered that the mayor and council, in retaining the presence of the city attorney and the chief of police, were in a situation similar to that of a judge in writing out his judgment in the company of other persons, and they deemed that the showing that no injury resulted to the plaintiff in error was sufficient to authorize the court to hold the irregularity harmless. To my mind, the

governing body of a city, upon appeal, to wit, its mayor and council, more nearly resembles a jury than a court, and certainly this is true so far as relates to their deliberations in the consideration of the evidence, which it is to be supposed the members of a common council would discuss largely in the same manner as would members of a trial jury. If the mayor and council of Rome, in passing upon *McCurry's* case, be considered as a court, then the trial had not ended, and the defendant, with his counsel, had the right to be present during every step of it. *Tiller* v. *State, 96 Ga.* 430 (23 S. E. 430); *Martin* v. *State, 51 Ga.* 567; *Smith* v. *State, 60 Ga.* 432; *Bonner* v. *State, 67 Ga.* 510; *Wilson* v. *State, 85 Ga.* 583 (13 S. E. 566); *Delk* v. *State, 100 Ga.* 61 (27 S. E. 152); *Hopson* v. *State, 116 Ga.* 90 (42 S. E. 412). Their right to be present had not been waived. If the council be treated as a jury, then the city attorney and the chief of police should have been excluded, for the case should have been considered by the triors apart from any and every other person.

Since the Supreme Court and this court, by uniformly according to municipal trial courts the prerogative of a jury in determining the credibility of witnesses and in finally adjudging all issues of fact, has ascribed to them the most important and essential power of a jury, I am of the opinion that a municipal council in passing upon facts, like a jury when engaged in a similar office, should be absolutely removed from contact with every extraneous influence. Upon grounds of public policy the jury during their deliberations are secluded from all other persons. For similar reasons the possibility of injury to one accused of a violation of a municipal offense, in consequence of the presence of the prosecuting attorney for the municipality during the municipal council's deliberation on the evidence, is such that public policy will not countenance such a proceeding and will pronounce it a travesty upon justice.