THE PEOPLE, PLAINTIFF AND APPELLEE, v. NOGUERAS,
DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan,. Section 2, in
in Prosecution for the Adulteration of Milk.

No. 855.—Decided December 22, 1915.

JURISDICTION.—The district court of the district in which an offense has been
committed has jurisdiction of the offense.

ID. — PUBLIC HEALTH AND SAFETY — ADULTERATED MILK — SHIPMENT BY RAIL-
ROAD.—When a person is charged with selling or offering for sale adulterated
milk as pure milk and it is shown that the offender adulterated and sold the
milk in the district where he resided and shipped it by rail directly to the
purchaser residing in another district, the offense must be held to have been
committed in the district in which the milk was adulterated and .sold—that
is, in the district where the vendor resides.

The facts are stated in the opinion.

*Messrs. Martínez & Iriarte* for the appellants.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment of the District Court
of San Juan, Section 2, convicting A. Nogueras of the offense
of selling and offering for sale adulterated milk as defined
and made punishable by Act No. 59 of 1910, entitled An Act
to provide a punishment for adulterating milk or offering
or keeping the same for sale, and sentencing him to six days
in jail.

The information, so far as pertinent, is as follows:

"In the city of San Juan, which forms a part of the judicial
district of the same name, on one of the days of the month of Novem-
ber, 1914, the said A. Nogueras unlawfully, wilfully and maliciously
had and offered for sale adulterated milk as pure milk."

The law applicable to the case is as follows:

"Every person who adulterates or dilutes milk with the intent
to offer the same for sale, or cause or permit it to be offered for sale,
and every person who sells, offers or keeps the same for sale, is guilty
of a misdemeanor  *  *  *." Act No. 59 of 1910 above cited.

Examining the information in relation to the law applicable, it is seen that the defendant is charged with the commission of the offense in two of the ways provided by the act; viz., selling and offering for sale adulterated milk as pure milk, the acts having been committed, according to the information, within the judicial district of San Juan.

Let us see what the evidence shows.

Carlos Abella Blanco, food inspector, testified that on November 21, 1914, he examined the milk which came to San Juan by railroad from towns of the island and took a sample of that which came from Arecibo and belonged to the accused, which sample he labeled and delivered to the Department. On being asked by the defense on cross-examination whether there was any employee of Nogueras in charge of the milk, he replied that the persons to whom Nogueras had sold the milk, the consignees, were in charge of it. In answer to a question by the court he said that the cans came closed and he had to order the consignees to open them.

Rafael del Valle and Bienvenido Matienzo, chief and assistant respectively of the chemical laboratory, testified that the milk sent by the accused was examined and found to be adulterated with water.

Finally, the accused testified as follows: "That he sent milk by railroad directly to the consignees and no employee went with it; that he had no agents in San Juan nor had he commissioned any one to represent him in the business directly or indirectly; that he sends the milk in closed cans strapped with strips of cloth and sealed with wax and that he has always sent it that way."

In his brief the appellant alleges that the trial court had no jurisdiction of the case because the offense was committed within the jurisdiction of the District Court of Arecibo and not within that of the District Court of San Juan, and he assigns this as fundamental error.

The question thus raised is interesting and we have considered it carefully. The law of Porto Rico on that point

is clear. Section 8 of the Code of Criminal Procedure prescribes that "The jurisdiction of an offense shall be in the district court of the district where the offense has been committed."

The constitutional provision on this point was construed by the Supreme Court of the United States in the case of *In re Palliser,* 136 U. S. 257, as follows:

"The petitioner relies on those provisions of the Constitution of the United States which declare that in all criminal prosecutions the accused shall have the right to be tried by an impartial jury of the State and District wherein the crime shall have been committed. Art. 3, sec. 2; Amendments, art. 6.

"But the right thereby secured is not a right to be tried in the district where the accused resides, or even in the district in which he is personally at the time of committing the crime, but in the district 'wherein the crime shall have been committed.'"

Is this a case in which it may be said that although the commission of the offense was begun in one district it was actually completed in another? If it had been shown that the milk was adulterated in Arecibo but as a matter of fact was sold by the accused in San Juan, either personally or through an agent, the question would be plain. The District Court of San Juan would have jurisdiction. But the evidence shows that the milk was sold in Arecibo and not in San Juan, the offense being entirely completed outside of the judicial district of San Juan.

In an indictment against H. G. Hopson he was charged with the offense of selling spirituous and intoxicating liquors in Brooks County of the State of Georgia. The evidence showed that one Gornto and J. W. Hopson, as partners, engaged in the sale of such liquors in Lowndes County and that the latter, J. W. Hopson, had a store in Brooks County in which the accused, H. G. Hopson, was employed. Several persons residing in Brooks County sent orders by mail to Gornto enclosing the price of the liquors ordered. These orders were filled by sending the liquors by express to J. W.

Hopson, who notified the purchasers of the arrival of the goods, whereupon the purchasers went and received the liquors from H. G. Hopson.

The case went to the Supreme Court of the State which in its opinion said:

"It is plain that none of the sales were completed in Lowndes County, for in no instance was there in that county a delivery of the liquor to the purchaser. Had the shipments been made directly to the purchasers, the case would have been different; for delivery to the carrier would have been, in legal contemplation, delivery to the purchasers."

The doctrine laid down by the Supreme Court of Georgia in the said case was summarized by the said court as follows:

"Where a dealer in one county receives from a person in another county an order for goods, and ships the same to an agent of the dealer in that county, to be delivered to the person sending the order, and this is accordingly done, the sale is consummated in the latter county; and this is so though the person ordering the goods pays for them in advance, and his name is marked on the package containing them when the same is shipped to the dealer's agent." 42 S. E. Rep. 412.

See also the cases of *Duff* v. *Commonwealth,* 68 S. W. Rep. 390, and 54 Ohio St. 242.

Applying the jurisprudence cited to this case, we are forced to the conclusion already stated, namely, that the sale was completed by the accused in Arecibo, for he sent the milk by railroad directly to the purchasers, and it should be considered that the railroad company acted as the agent of said purchasers. 35 Cyc. 173.

Taking into consideration all the foregoing, we are of the opinion that the appeal should be sustained, the judgment appealed from reversed and the defendant discharged.

*Reversed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.