## WARREN *v.* THE STATE.

1. Under the special facts in the case, it was not cause for the grant of a new trial that the judge gave brief additional instructions to the jury, in the presence of the defendant but during voluntary absence of his counsel, upon questions that he had unintentionally omitted from his general charge.

2. The court was duly requested in writing to charge as follows upon the subject of reasonable doubt: "If you have a reasonable doubt growing out of the evidence or want of evidence or from the defendant's statement as to whether the accused acted, when he stabbed the deceased, under circumstances calculated to excite the fears of a reasonable man, or whether he felt at the time he stabbed him and had reason to feel from the circumstances that it was necessary to stab the decedent to save his life, limb, or person, then he was justifiable and you should acquit him, even though you should believe from the evidence in the case that he stabbed and killed the decedent." Conceding that this instruction was correct and appropriate, the refusal to give it is not cause for the grant of a new trial in this case, especially in view of the actual charge by the court upon the subject of reasonable doubt and the charge upon the subject of self-defense, embraced in the instructions as given.

3. The court did not err in refusing a request to give in charge to the jury the following: "If upon a sudden quarrel Henry Warren and

Criminal Law, 16 C. J. p. 949, n. 96; p. 1036, n. 65; p. 1063, n. 85; p. 1089, n. 53; p. 1150, n. 98.

Homicide, 29 C. J. p. 1102, n. 2; 30 C. J. p. 344, n. 68; p. 370, n. 29; p. 389, n. 53; p. 417, n. 88.

Robert Wilson, the deceased, fought upon the spot, or presently agreed and fetched their weapons and fought, and one of them is killed, such killing is voluntary manslaughter, no matter who strikes the first blow. A mutual intention to fight need not be proved directly, but may be inferred by the jury by the conduct of the parties." There is nothing in the statement of the defendant or in the evidence in the case that would authorize a charge upon the subject of mutual combat on the theory that the defendant and the deceased "presently agreed and fetched their weapons and fought."

4. The court did not err in refusing a request to charge the following: "If you believe from the evidence or from the statement of the defendant that the weapon alleged to have been used by the defendant in producing the death of the decedent was not a weapon which was likely to produce death, and which was not used in a manner which would naturally tend to destroy the life of a human being, you would be authorized and it would be your duty to find the defendant guilty of involuntary manslaughter." If the defendant, without provocation (as the evidence tends to indicate), cut and stabbed the deceased with a knife and thereby inflicted a wound from which he died, he was guilty of murder, and his crime would not be that of involuntary manslaughter.

5. The ruling just made is applicable to another request to charge, similar to that last dealt with, contained in the 6th ground of the amendment to the motion for a new trial.

6. The court did not err in declining to charge upon the subject of involuntary manslaughter.

7. The court's charge upon the subject of voluntary manslaughter, and upon the subject of justifiable homicide which immediately followed the charge upon voluntary manslaughter, was not confusing and misleading to the jury in that it tended to impress the jury (as the movant contends) with the fact that the law of justifiable homicide was a part of the law of manslaughter.

8. Error is assigned upon the following charge of the court: "I charge you further, that you look to the defendant's statement and see whether or not he said in his statement that he killed Robert Wilson either in self-defense to save his own life or to prevent a felony from being committed upon him; and if you find he did make that statement, then you look to all the circumstances surrounding him at the time he did the killing, if you find that he did the killing, and if you find that he said that he did it, if you find that he admitted the killing, the law then puts upon him the burden to satisfy the jury that he was justified under some rule of law, unless the evidence in the case, taken from the witnesses or the statement of the defendant, shows justification or mitigation." This charge may be somewhat lacking in precision and accuracy, but in view of the evidence and the statement of the prisoner it is not cause for the grant of a new trial by this court. *Mann* v. *State*, 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934).

9. The court charged the jury as follows: "Now I charge you, gentlemen, if you believe beyond a reasonable doubt that this defendant, Henry Warren, now on trial in the County of Miller, State of Georgia, at any time prior to the date of the finding and return of this bill of indictment into court by the grand jury, did kill the person named in

this bill of indictment in the manner charged by the use of a weapon, and in this case a knife is charged, and that the weapon .as used at the time was a weapon likely to kill, and you should further believe that at the time of the killing this defendant, Henry Warren, was in no danger from the person killed, Robert Wilson, or that the person killed, Robert Wilson, was not committing an assault upon him, that the circumstances were not sufficient to excite the fears of a reasonable man, that the deceased, Robert Wilson, was intending or endeavoring or was about to commit a serious personal injury upon the person of the defendant, but that the killing was without justification or mitigation, then and in that event you would be authorized and it would be your duty to find the defendant guilty of the crime and offense of murder. If you do not believe that beyond a reasonable doubt, or if you have a reasonable doubt about it, as to this defendant's guilt of the offense of murder, you should not convict him of that offense at all, and it would be your duty to acquit so far as the charge of murder is concerned." Movant insists that the above-quoted excerpt from the charge is error, "for the reason that the court, just before the words 'intending or endeavoring,' omitted the word 'manifestly,' and by omitting the word 'manifestly' thereby restricted and qualified the law of self-defense, and thereby deprived this defendant of the benefit of said law." There is no merit in this contention. If it made any substantial change of the rule as stated to the jury, it was not a change that was hurtful, but to the contrary.

10. The ruling made in the last preceding headnote is applicable also to the exception to the excerpt from the charge set. forth in the 11th ground of· the amendment to the motion for a new trial.

11. Another excerpt from the charge excepted to is as follows: "Legal malice is not ill will or hatred. It is an unlawful intention to kill, without justification or mitigation, which intention, however, must exist at the time of the killing alleged, but it is not necessary for that intention to exist for any length of time before the killing; in legal contemplation a man may form the intention to kill, do the killing instantly, and regret the deed as soon as it is done." This was not error on the ground urged, that "it contained an intimation by the court to the jury that the defendant had malice at the time of the killing, and that he killed the deceased with malice and without justification or mitigation and immediately regretted the deed."

12. The law of voluntary manslaughter as related to the doctrine of mutual combat was not involved under the evidence in the case, though it may be involved under the prisoner's statement; but a request to charge which assumed there was evidence to show mutual combat was properly refused.

No. 5391. November 15, 1926.

Murder. Before Judge Yeomans. Miller superior court. March 13, 1926.

*P. Z. Geer* and *Chester A. Drake,* for plaintiff in error.

*George M. Napier, attorney-general, B. T. Castellow, solicitor-general, T. R. Gress, assistant attorney-general, R. R. Arnold,* and *E. C. Hill,* contra.

BECK, P. J.    Henry Warren was tried under an indictment charging him with the offense of murder.  The person alleged to have been murdered was Robert Wilson.   Jim Kemp, introduced as a witness by the State, testified in substance that he knew Robert Wilson; that Henry Warren killed him on the third Sunday in July, 1925.   He was an eye-witness of the fact.   He was present at a party at the house of one John Bird, where a considerable number of people were gathered.   Witness was in the room where the killing occurred.   He was sitting in a chair, and a woman by the name of Rosa Barber was sitting in his lap.   This woman made a remark very derogatory to another woman in the room.   The other woman walked away, and a few minutes after that Henry Warren and John Bird were standing close to the door.   Warren said: "Cut this —— fuss out, you —— sons of bitches, before I kill every one of you."   He then ran into Robert Wilson about two steps from the witness, and shoved him with his left hand and stabbed him.   Wilson did not go towards Warren at all.   Warren had a knife in his hand, and shoved Wilson and stabbed him; he had a knife open when he ran into Wilson.   Wilson was standing with a cigarette in his hand, preparing to light it.   Warren stabbed him a little above the collar-bone in the front part of the neck.   Wilson ran out and up to a wire fence, fell, and died almost immediately.   Witness did not see any weapon in Wilson's hand.

Willie Grimsley, another eye-witness to the killing, gave substantially the same testimony as that of Kemp.   He testified positively that no words passed between the accused and the man who was slain.   He remembered nothing of any "fuss" there.   Wilson was standing up with a cigarette in his mouth.

Rosa Barber, also an eye-witness, testified substantially to the same facts as detailed by the witnesses previously named.   To quote her words in part, she said: "Henry Warren was tearing through the crowd, cursing and shoving people back, and went right on to Robert Wilson and said, 'Cut it out —— —— it,' and I don't know what Robert Wilson said, but Henry Warren grabbed hold of Robert Wilson with one hand and stabbed him with the knife just under his neck.   Robert Wilson did not have anything in his hand; he had a cigarette in his mouth."   The details of the killing as given by this witness were in substantial accord with the details given by the other witnesses quoted above.

Dora House, a witness for the State, who was present at the time of the homicide, testified: There was no altercation between Wilson and the defendant at the time of the killing. Wilson was standing up smoking a cigarette; had one hand on his hip. He had the cigarette in his mouth, and Henry Warren pushed and shoved through the crowd and said, "Get out of there with that —— fuss;" and said what he would do if they refused. Warren went pushing through the crowd and pushed Wilson back, and Wilson cursed, and then Warren cut him with the knife. Wilson had no weapon, nor was he making any attempt to hurt any one at the time. Wilson started to run, stumbled, but caught on his knees; and when he went to get up, Warren seized him again as he went to rise; and then Wilson, tearing loose from Warren's grasp, went out the door half bent.

One Shephard, sworn in behalf of the State, testified substantially to these facts already stated. Ella Bird, another witness for the State, testified that she saw the killing; saw Henry Warren walk up to Wilson, catch hold of him and stab him. She testified that the next morning Henry Warren took Wilson's knife out of his pocket and laid it at his (Wilson's) feet, and next morning got his (defendant's) wife, and she made a little mark on his neck. Told his wife to cut him on the neck, and she made a little mark on his neck. She merely sawed on his neck a little bit.

H. M. Roberts, for the State, testified in part that he saw Henry Warren on the morning after the killing, and asked him who killed Robert Wilson. Warren replied that he did not know who killed him, but said "the poor boy was killed for nothing." B. B. Houston, for the State, testified that he went out to Henry Bird's house the next morning after Wilson was killed. The body of the latter was lying at the end of the house in the yard. He was lying on his back; a knife was near his hand. Henry Warren said he did not know who killed him. "He never quit denying knowing who killed him until we got that knife—that knife there. That was about four days after Robert Wilson was killed. He continued denying knowing who killed Robert until I presented this knife to him. This knife was delivered to my brother. I am deputy sheriff in Miller County." The knife referred to was introduced in evidence.

The defendant introduced no evidence, but made the following

statement: "Gentlemen of the jury, when the fuss occurred this girl Adeline walked in the house, and this girl Rosa spoke to her and said, 'There is a whore that has been out all night,' and Adeline said, 'Who are you talking to, to me?' and Robert Wilson said, 'No, she is not talking to you, but she is talking to me,' and I was standing in the door 'side of John Henry Bird, and Dora Howell was sitting by the side of the door, and her boy was sitting just beyond her, and they kept on arguing, and in the racket and I spoke to the woman inside of the house, and I said, 'If I was you all I would not be arguing that way,' and Robert Wilson spoke to me and said, 'You —— —— son of a bitch, what have you got to do with it?' and I didn't say nothing. I went on towards him, and he throwed his hand back on his pocket, and he grabbed me on the neck, and I slapped him off. I thought he was going after his pistol by his throwing his hand back that way, and I pulled out my knife and met him with it as he come back. I was not after killing him with it, I was trying to keep from getting hurt myself."

The jury returned a verdict of guilty, without a recommendation. The defendant made a motion for new trial, which was overruled, and he excepted.

1. In the first ground of the amendment to the motion for a new trial complaint is made that the court erred in recalling the jury from their room after they had been charged in the case, and after they had been out only a few minutes, and giving them another charge in the absence of the defendant and in the absence of defendant's counsel, without the consent of defendant and his counsel. To this ground the court appends the following note: "Within two or three minutes after the main charge was delivered and before any other case was sounded, the jury was recalled to their box and the supplementary charge complained of in paragraph one of the amended motion was delivered, the defendant being present. Defendant's attorneys had not been excused nor did they have leave of absence, and the court thought they were present. Certainly Mr. Geer, leading counsel, according to his affidavit, was in the court-room before the charge was completed, and the court's attention was not called to any irregularity, nor was any motion made." We are of the opinion that the court did not err in overruling this motion for a new trial, so far as it

rests upon the ground just recited, considered in connection with the court's note. The judge had charged the jury and they had retired to the jury-room. Within two or three minutes after they retired, and before sounding any other case, the judge had the jury recalled and stated to them that there were some matters which he had unintentionally overlooked, and then gave the jury the following charge: "Gentlemen of the jury, the charge which I have given you is a rather lengthy charge, and in giving you that charge there are some matters I unintentionally overlooked, and you may consider what I will now give you in connection with the other charge I have already given you. I am going to charge you gentlemen on self-defense. The right to kill another in self-defense is not restricted to instances where the defendant was put in actual danger of life or of the commission of a felony upon him by the party killed, but may be exercised where such danger is not actual, if the defendant in good faith, under the fears of a reasonable man and under circumstances so authorizing, acted upon the belief that the danger was real. I charge you, gentlemen, that an apparent necessity to kill another, acted upon in good faith by the defendant, is the equivalent of a real necessity. If you have a reasonable doubt arising from the defendant's statement, or from the evidence or from the lack of evidence, as to whether the circumstances surrounding the defendant at the time of the killing of Robert Wilson were sufficient to excite the fears of a reasonable man that his life was in danger or that a felony was about to be committed upon his person from the deceased, then it would be your duty to give the defendant the benefit of such doubt and acquit him. Now, you take this case under the charge of the court and all the facts and circumstances surrounding it, as gathered from the witnesses who have testified and the statement of the defendant, and you find out what the truth of this case is, and then write in your verdict the truth of the case."

If the defendant on this trial seriously insisted on the theory of self-defense, or there was any chance that he might have at the hands of the jury a verdict of not guilty upon this theory of the case, the charge was apparently helpful and not injurious. The jury had been charged and had retired, but had been out only two or three minutes, hardly time for them to take their seats in the jury-room and begin the consideration of the case,

when they were recalled. The defendant was in the court-room. We do not overlook the decisions in which this court has shown that it will jealously guard the right of the defendant to have his counsel present at every stage of the trial. The doctrine has been distinctly ruled more than once. In *Martin* v. *State*, 51 *Ga.* 567, this court said: "When a jury, on the trial of a criminal case, have retired to consider of the verdict, and have been called back by the court to be recharged, it is the right of the defendant to have his counsel present, and he does not lose this privilege unless by a clear and distinct waiver thereof." See also the case of *Hopson* v. *State*, 116 *Ga.* 90 (42 S. E. 412). Similar rulings have been made with reference to the right of the accused to have his counsel present when the verdict is delivered in court. But while this principle is to be upheld, nevertheless in certain cases, in view of the particular circumstances of the case, it has been ruled that this doctrine would not work a new trial. In *Baldwin* v. *State*, 138 *Ga.* 349 (75 S. E. 324), it was said: "In his motion for new trial the accused complains that the court received the verdict in the absence of his counsel. The trial judge certifies that during the term counsel for the accused had absented himself from the court-room in other cases in which he was sole counsel, after the cases had been submitted to the jury, resulting in delay in the effort to call counsel into the court-room, and he was twice admonished by the court that if he voluntarily absented himself again, the court would receive verdicts in his cases during his absence. When the jury in the present case came into the court-room to render their verdict, the defendant was present, but counsel for defendant, without permission of the court, had absented himself from the court-room. The judge directed an officer to look for counsel in the lawyers' consulting-room. He was not there. Counsel was then called from the court-room window, but not at the instance of the judge. The judge waited a little while for counsel to appear, and then received the verdict. The jurors were standing at the bar rail on the outside of the space reserved for the bar when the verdict was received. Counsel entered just as the jurors were taking their seats, not in the jury-box, but just beyond the bar railing. The judge could not say that the jurors did not sit down where persons other than the jury were sitting, but few of the jurors were actually seated when counsel

came into the court-room. He was at once informed of the verdict
and its nature, and made no request for a poll of the jury. Under
these circumstances the refusal to grant a new trial on the ground
of the absence of defendant's counsel at the time of the reception
of the verdict was not error. *Roberson* v. *State,* 135 *Ga.* 654 (70
S. E. 175) ; *Richards* v. *State,* 136 *Ga.* 67 (70 S. E. 868)." The
case of *Roberson* v. *State,* supra, is very closely in point, and sup-
ports the court in the conclusion announced above.

It is stated in the judge's note that he thought that counsel was
still in the court-room, for the jury was called back almost im-
mediately ; that is, before the judge had sounded any other case.
If the jury was called back in two minutes and before another
case could be sounded, counsel for the accused must have departed
from the court-room almost immediately. And they also returned
quite promptly; for they were in the court-room while a part of
the additional charge was being given to the jury, and the whole
of the additional charge would not have required more than two
minutes to deliver.

2-11. The rulings made in headnotes 2 to 11, inclusive, re-
quire no elaboration.

12. In the only ground of the motion for new trial which we
have not yet considered error is assigned upon the refusal by the
court of a request to give the following instruction, which was
duly submitted before the court began his charge to the jury : "If
you believe from the evidence or from the statement of the defend-
ant that he and Robert Wilson had a sudden quarrel and that they
mutually agreed to fight upon the spot or did fight, and that the
defendant, Henry Warren, killed Robert Wilson while engaged in
mutual combat as the result of that sudden violent impulse of
passion supposed to be irresistible, it would be your duty to find
the defendant guilty of voluntary manslaughter, and not murder."
We are of the opinion that the court did not err in refusing to
give this in charge to the jury. We have set forth in substance
the testimony of the witnesses for the State. That evidence shows
wilful and unprovoked murder. But the defendant in his state-
ment said in part:  "I spoke to the woman inside of the house,
and I said, 'If I was you all I would not be arguing that way,'
and Robert Wilson spoke to me and said, 'You ―― son of a
bitch, what have you got to do with it?' and I didn't say nothing.

I went on towards him, and he throwed his hand back on his pocket, and he grabbed me on the neck, and I slapped him off. I thought he was going after his pistol by his throwing his hand back that way, and I pulled out my knife and met him with it as he come back. I was not after killing him with it, I was trying to keep from getting hurt myself." Under the portion of the statement which we have just quoted, the law of voluntary manslaughter was involved in the case upon the theory that the accused stabbed and killed the decedent while engaged in mutual combat. There need not be mutual blows, to constitute mutual combat. There must be a mutual intention to fight, and it need not be proved by direct evidence, but may be inferred by the jury from the conduct of the parties. And in the case at bar the statement of the defendant would have authorized the jury to find that the killing occurred during a mutual combat. In the case of *Ray* v. *State,* 15 *Ga.* 223, it was said: "Our law requires that there should be some assault by the person killed upon the person killing; but evidence of such assault may be found in a mutual intention to fight, and in the fact of an approach by the decedent to the prisoner, in furtherance of this design, when it was not necessary for him to do so in self-defense." And where the law of voluntary manslaughter as related to the doctrine of mutual combat is involved in a case, under the evidence, it is the duty of the court to give in charge to the jury that phase of voluntary manslaughter, and the omission to do so is cause for a new trial, where the accused is convicted of murder. *Waller* v. *State,* 100 *Ga.* 320 (28 S. E. 77) ; *Findley* v. *State,* 125 *Ga.* 579, 583 (54 S. E. 106). We give full recognition to these rules taken from the decisions in the cases cited; but our ruling that the refusal to give the charge requested and set forth above was not error is based upon other well-recognized rules. One of them is, that where the theory of the defense in a criminal case is based solely upon the statement of the defendant, and does not grow out of the evidence, it is not error for the court to fail to charge upon this theory of the defense, in the absence of a pertinent and timely request in writing to so charge. And the other rule is, that it is not error to refuse a request to charge unless the charge in itself is accurate, pertinent, and unexceptionable. *S. A. L. Ry.* v. *Moseley,* 144 *Ga.* 35 (85 S. E. 1021). And the request to charge, upon the refusal of which

error is assigned, is not accurate nor unexceptionable. In the first place, the charge assumes that there was evidence to show that the decedent and the accused had a sudden quarrel; and there was no evidence in the case that would authorize the jury to find that there was mutual combat. And in the second place, the charge submits to the jury the question as to whether there was a mutual agreement to fight, and there is nothing either in the evidence or in the statement of the accused to authorize a charge of mutual combat resulting from a mutual agreement to fight. Consequently the court did not err in refusing this request to charge.

No material error having been shown by the assignments of error in the motion for a new trial, and the evidence authorizing the verdict, the judgment of the court below must be affirmed.

*Judgment affirmed. All the Justices concur, except*

ATKINSON, J., who dissents from the rulings in headnotes 4, 5, and 8.