4984.  MILLER *et al.* v. THE STATE.

1. The evidence in support of the verdict, while entirely circumstantial, measures fully up to the standard of proof required by the statute, in that it is inconsistent with innocence and excludes every reasonable hypothesis except that of the guilt of the accused.

2. After the jury on the trial of the accused for burglary had been instructed, and had been out for several hours and until late at night considering the verdict, the trial judge, with the sheriff, went to the courtroom and, in the absence of the accused and of their attorneys, inquired of the jury whether the jurors desired to be "put to bed," or were likely to make a verdict. Without responding to this, one of the jurors inquired of the judge as to what he had charged with reference to the right of the jury to recommend that the defendants be punished as for a misdemeanor. The judge responded that he had charged that in the event the jury should find the defendants guilty, they would have the right to recommend that the defendants be punished as for a misdemeanor, and that if such recommendation should be approved by the court, the defendants would receive a misdemeanor sentence. On the next morning, about nine o'clock, a verdict was returned, finding the accused guilty and recommending that a misdemeanor sentence be imposed. *Held:* · (1) The statement of the judge in answer to the question of the juror did not amount to a recharge, and was equivalent to an

instruction merely as to a form of verdict that the jury could return if they· saw fit to do so. (2) At most it was merely a harmless irregularity and not a sufficient ground for setting aside a verdict strongly supported by the evidence, especially as it appears that the attorneys for the accused were immediately informed of the occurrence by the trial judge, and failed to make a motion for a mistrial, and did not attempt to have the error corrected in any manner until after verdict.

DECIDED AUGUST 16, 1913. REHEARING DENIED SEPTEMBER 17, 1913.

Indictment for burglary; from Lumpkin superior court—Judge Jones. May 24, 1913.

*R. H. Baker, Edgar Latham, Moore & Branch,* for plaintiffs in error.

*Robert McMillan, solicitor-general, W. A. Charters, B. P. Gaillard Jr.,* contra.

HILL, C. J. The plaintiffs in error were jointly indicted for burglary, and were convicted. They filed a joint motion for a new trial, based upon the general grounds and upon numerous special assignments of error. This motion having been overruled, the case is here for review.

1. We do not deem it necessary to consider the general grounds for the purpose of showing that the verdict was supported by the evidence. While the conviction was based entirely upon circumstantial evidence, a careful examination of the evidence satisfies this court that the proof comes fully up to the standard required by law as to this character of evidence. The proved facts were not only consistent with the hypothesis of guilt, but excluded every other reasonable hypothesis save that of the guilt of the accused. Penal Code (1910), § 1010. We hazard nothing in saying that in our opinion it would be difficult to establish guilt by a clearer, stronger, or more consistent chain of facts and circumstances, or by circumstances which, taken together, would prove more conclusively the guilt of the accused. The verdict therefore should be allowed to stand, unless some material and prejudicial error of law was committed on the trial. An examination of all the special assignments of errors of law leads us to the conclusion that all but one are so clearly without merit as to render extended discussion of them wholly unnecessary. Indeed, this seems to have been the view entertained· by learned counsel for plaintiffs in error, who, while not abandoning any of the grounds of the motion for a new trial, seem to rely principally upon one only. This one we will briefly consider and determine.

2. The ground referred to is as follows: "The jury was charged and entered upon the consideration of the case about one o'clock on the afternoon of April 24th, and remained in the jury-room during the afternoon and until about 10 o'clock at night, considering the case. The verdict was returned at 9 o'clock a. m., April 25, 1913. During the afternoon the jury had stated, in response to inquiries from the court, that it was not likely to agree upon a verdict. About 10 o'clock at night the judge, in company with the sheriff, visited the court-house and inquired of the jury at the door of the jury-room if they desired to be put to bed or were likely to make a verdict; the purpose of the judge being to arrange for the care and comfort of the jurors during the night, unless they were likely to agree upon a verdict. At this point one of the jurors inquired of the judge as to what he had charged with reference to the right of the jury to recommend that the defendants be punished as for a misdemeanor. To this inquiry the judge responded by stating, in substance, that he had charged that in the event the jury should find the defendants guilty, they would have the right to recommend that the defendants be punished as for a misdemeanor, and that if such recommendation should be approved by the court, the defendants would receive a misdemeanor sentence. Within a few minutes after this occurrence the judge informed counsel for defendants as to what had occurred. The defendants and their counsel were not present, nor had they waived their right to be present. Movants contend that, inasmuch as their counsel was not present and had not waived the right to be present when the judge answered the question of the juror, a new trial should be granted, for the reason that the answer of the judge, made in response to the question of the juror, was, in effect, a recharge, and especially so to the juror who propounded the question."

It is well settled that in the trial of a criminal case, whether a felony or a misdemeanor, the accused has the right to be present, in person and by his attorney, during every stage of his trial from the arraignment to the verdict. *Lyons* v. *State,* 7 *Ga. App.* 50 (66 S. E. 149), and citations. This right can not be lost except by a clear and distinct waiver thereof by the accused. *Martin* v. *State,* 51 *Ga.* 567, and citations. This right is guaranteed to the accused by the fundamental law of this State, in order that he and his counsel may see to it that he has a fair and impartial trial and

that nothing is done that would in any wise tend to his prejudice. Unquestionably the trial judge should not in any manner communicate with the jury about the case, in the absence of the accused and his counsel, pending the trial; and the better practice is for the judge to have no communication with the jury on any subject except through the medium of the sworn bailiff in charge of the jury; and the communication should be restricted, in the absence of the accused and his counsel, to matters relating to the comfort and convenience of the jury. There should be no communication which would tend in any manner to prejudice the accused (for instance, to hasten a verdict against him, or to induce jurors who might be for him to yield their convictions); and unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial, and the accused would be entitled to another trial. In line with this, it has been ruled in this State that in the absence of both the prisoner and his counsel, the court could not call in the jury and read to them notes of the evidence (*Wade* v. *State,* 12 *Ga.* 25); and that in the absence of the prisoner, who was confined in jail, the judge was not authorized to recharge the jury, although the prisoner's counsel was present and made no objection to the recharge (*Bonner* v. *State,* 65 *Ga.* 510).

The case of *Hopson* v. *State,* 116 *Ga.* 90 (42 S. E. 412), is relied upon by counsel for the plaintiffs in error. In that case it was held that "recalling a jury in a criminal case who had retired to consider of their verdict, and, in the absence of the accused and his counsel and without their consent, giving a second charge, is cause for a new trial, even though this charge be the same in substance as that which had been delivered in the first instance." In that case it was further said that it would make no difference whether both the accused and his counsel were ignorant of the recharge until after the trial ended, and that this irregularity might be taken advantage of after verdict, notwithstanding the knowledge thereof by the accused and his counsel while the trial was in progress. The first question, therefore, to be considered in the present case is whether the statement which the judge made in answer to the inquiry of the jury amounted to a recharge. In *Roberson* v. *State,* 135 *Ga.* 654 (70 S. E. 175), it was held not to be ground for a new trial that the judge, in the presence of the defendant but

during the voluntary absence of his counsel, repeated his instructions to the jury as to the different forms of verdict that might be rendered. In the present case it does not appear whether counsel was absent voluntarily or not; and while it is not distinctly stated, it is fair to assume that the accused were involuntarily absent, because in confinement; for it is not at all probable that they were out on bond. We cite the *Roberson* case not as to this phase of the question, but for the purpose of showing that the statement made by the trial judge in the present case was not a recharge, and simply amounted to a restatement of the form of the verdict. The *Hopson* case, supra, is certainly a very strong authority in support of the contention of the plaintiffs in error, but we think it is differentiated from the present case by the fact that in that case the judge recalled the jury and repeated his entire charge to them, in the absence of the accused and his counsel. Certainly this could not be allowed. To permit such practice would tend to undermine and to destroy the value of a fair and impartial trial and to deprive the accused of his inalienable right to be present at every stage of the trial and to have his counsel present for the purpose of protecting his rights; and in the *Roberson* case, supra, the Supreme Court evidently took this view of the question; for the court distinguished that case from the *Hopson* case by the fact that in the *Hopson* case there was a repetition of the entire charge, while in the *Roberson* case the judge repeated his instructions only as to the different forms of verdict authorized to be rendered.

In considering the right of the accused to be present at every stage of the trial, and to have his counsel present, we must not lose sight of the further principle, equally well established, that a new trial will not be granted on account of an error which manifestly caused no injury to the accused. It would be trifling with justice to set aside a verdict clearly and strongly supported by the evidence, solely on the ground that such an error had been committed by the trial judge. To warrant such action by a reviewing court, it must be manifest that the error was prejudicial in character. How could it have prejudiced the accused for the judge to have repeated to the jury, in answer to the juror's inquiry, what he had already stated,—that they would have a right to recommend that the case be treated as a misdemeanor, and that he, in his discretion, could adopt such recommendation? The statement appar-

ently was favorable to the accused. It emphasized the right of the jury to treat the case as a misdemeanor. It must be perfectly clear that it could not have induced any juror to yield any conviction as to the essential fact of the guilt of the accused. If the members of the jury were divided or hesitating, it was not as to the guilt of the accused, but as to their right to make a recommendation that the case be treated as a misdemeanor; it did not hasten a verdict, for the verdict was not returned until eleven hours thereafter. Besides, the judge almost immediately made a statement of the occurrence to the counsel for the accused. If they thought the communication was prejudicial or was a recharge to the jury, it was their duty to have insisted then, or certainly the next morning, on the withdrawal of the case from the jury and the declaration of a mistrial.

We are not unmindful of the fact that in the *Hopson* case it was said that it would be a matter of indifference whether the accused or his counsel knew of the alleged misconduct of the judge or not, that the irregularity could be taken advantage of after verdict. This question was not involved in the *Hopson* case, and this part of the opinion seems to have been obiter dictum of the judge who wrote the opinion. We are not willing to hold, in the absence of a direct decision to the contrary by the Supreme Court, that an irregularity in a criminal trial could not be waived by silence as well as by action. It has been frequently held by the Supreme Court that the unauthorized dispersal of the jury could be waived by silence, or by failure to make timely objection. It has also been held that knowledge of the disqualification of a juror is waived by failure to take timely advantage of the knowledge of the disqualification. Many rights involving a fair and impartial jury trial may be waived, either by the conduct of the accused or his counsel or by their silence. *Scott* v. *State*, 6 *Ga. App.* 567 (65 S. E. 359); *Walker* v. *State*, 2 *Ga. App.* 636 (58 S. E. 1106); *Davis* v. *Ragin*, 7 *Ga. App.* 308 (66 S. E. 806), and citations. The accused and his counsel should not be allowed to take their chances of a favorable verdict, with knowledge of an irregularity, and, after losing, set up such irregularity as ground for another trial. But we do not place our judgment solely on this view. We rather place it upon the opinion that the statement made by the judge in the present case to the juror did not amount to a recharge, but was

equivalent simply to an instruction as to the form of a verdict which the jury were authorized to render; and that even though an irregularity, it did not and could not result in injury to the accused. If we thought the accused had been deprived of any essential right by this statement made to the juror by the judge, we would not hesitate to grant another trial for that reason, but we can not imagine any right that the accused was deprived of by the statement made to the juror as to the power of the jury to recommend that the charge of felony be treated as a misdemeanor. The evidence is so strong and so clear as to guilt that we do not feel that we should, in the interest of justice, declare another trial for a mere irregularity which, in our opinion, was immaterial, and which could not in any view have been productive of injury to the accused.

*Judgment affirmed.*

RUSSELL, J., concurring specially. I agree, not without doubt, to the proposition that the circumstantial evidence tending to show the guilt of the accused was sufficient to authorize their conviction; and, that being so, this court is without jurisdiction to interfere with the verdict upon that ground of the motion for a new trial in which it is insisted that the verdict is contrary to the evidence. However, I do not concur in the opinion that the conduct of the trial judge was a mere harmless irregularity, nor can I view his statement to the jury as to their right and power to recommend otherwise than as an instruction in the nature of a recharge. From a long personal and professional acquaintance with the judge who presided in this case, no man knows better than the writer that this upright magistrate is wholly incapable of consciously doing any act which would work injustice to any citizen or litigant. The judge who presided in the trial of this case is a model of fairness and impartiality. Nevertheless, I can not consent to hold that the state of facts set forth in the record can be disregarded, as not tending to work prejudice to the rights of the accused to a fair and impartial trial. When the judge asked the jury in this case if they were likely to agree upon a verdict, in the absence of the defendants and of their counsel, it is apparent to my mind, from the question of the juror who acted as spokesman for that body, that the jury was in doubt as to what verdict should be rendered. It is inconceivable that a jury of ordinary intelligence does not know that in most felonies the punishment can be reduced, at the discretion of

the judge, upon a recommendation to that effect. No doubt, the jury had been discussing that phase of the case. It is a matter of common knowledge that the power of the jury to recommend that a felony be punished as for a misdemeanor frequently results in compromise verdicts, in which there is more or less doubt as to the real guilt of the accused of the offense charged. For a judge, in the absence of the defendant and his counsel, to recharge the jury upon this particular point is as harmful as if there had been an entire recharge. I think the defendants would have been entitled to a mistrial if they had moved in time; but, as was well said by the Chief Judge in his opinion, the defendants waived this right to object. It appears from the record that they had ample time and full notice. It does not appear that there was any reason why they could not have made a motion when the court reconvened on the morning following the incident to which reference is made. One accused of crime can waive any of his rights, or all of them, and where he remains silent and takes the chances of an acquittal, instead of claiming a right to which he is entitled, he can not, after conviction, ask that that right be accorded him. *Lampkin* v. *State, 87 Ga.* 516 (13 S. E. 523). Since the defendants waived their right to ask a mistrial, they must be adjudged to have forfeited this right entirely. The point is valueless to them here. If they had objected at the time and moved for a mistrial I am of the opinion that it would have been clearly error for the trial judge to have refused to declare a mistrial.

Pottle, J., concurring specially. While in *Hopson* v. *State, 116 Ga.* 90 (42 S. E. 412), the Supreme Court said in substance that it made no difference whether the accused and his counsel were ignorant of the fact that the jury had been recharged, and conceding that this statement was not obiter, yet later cases indicate a disposition of that court to modify the decision in the *Hopson* case. This plainly appears from the decisions in *Roberson* v. *State,* 135 *Ga.* 654 (70 S. E. 175), *Richards* v. *State,* 136 *Ga.* 67 (70 S. E. 868), and *Baldwin* v. *State,* 138 *Ga.* 349 (75 S. E. 324). If the case sub judice were identical upon its facts with the *Hopson* case, it would be our duty to follow that decision, because it has never been formally overruled, but it differs from the *Hopson* case in two particulars: first, because it affirmatively appears in the present case that counsel sat silent for eleven hours, with knowledge of the

fact that the judge had charged the jury as to their right to recommend; and secondly, because in the *Hopson* case the judge repeated his entire charge in the absence of the accused.