## 36949. JONES v. THE STATE.

SMITH, Justice.

Jones was convicted for the murder of his former wife and sentenced to life imprisonment. In this appeal he raises nine enumerations of error. We affirm.

1. In his eighth enumeration of error appellant asserts that the evidence, wholly circumstantial, does not establish his guilt beyond a reasonable doubt. We cannot agree.

From the evidence introduced at trial, a rational trier of fact was authorized to find the following: Appellant and his former wife, Betty, had been divorced for approximately one year. Appellant was despondent, and he threatened to kill his wife and to commit suicide. About two weeks before Betty was killed, two of appellant's friends went to his apartment in an effort to calm him. Appellant told them that neither he nor Betty was "fit to live." On Friday, November 23, four days before Betty was killed, appellant threatened to kill her, and he showed his friend, Larry Fields, a sales receipt for the purchase of a revolver from the Maddox Pawn Shop. This receipt indicates that James Franklin Jones purchased a .38 caliber Taurus revolver on November 23, 1979.

The following day appellant was arrested for making harassing telephone calls to the victim. On Sunday, appellant called Larry Fields and sought his assistance in obtaining a warrant for Betty because she was aggravating him on the phone. Sometime later that Sunday, Sandy Brooks, a friend of the victim, received a phone call from her. Ms. Brooks quickly went to the victim's apartment a short distance away. As she pulled into the apartment complex, she saw the appellant driving away. When she arrived at the victim's apartment, she observed the victim in a "real nervous, shaking" state.

Appellant left work on Monday at nine o'clock in the evening. He began drinking and went to a couple of bars. Around 3:15 a.m. Tuesday morning, he received a phone call from the victim, who wanted him to come over to her apartment. At approximately 6:30 a.m. the same morning, Larry Fields received a phone call from appellant instructing Fields to go to appellant's apartment to find a note left on the bar. The appellant told Fields that he had "f——- up" and that Fields would "hear about it in a little while." Appellant said, "I'm going to Virginia to see my mother, one more time."

On Tuesday, when the victim failed to arrive at work, Ms. Brooks became concerned and went to the victim's apartment. She found the victim lying dead at the foot of the stairs and called the police. A neighbor told the police investigator that she had been awakened by a sound from the victim's apartment around 5:30 or 6:00

a.m. The victim died as a result of a gunshot wound to the head. She also suffered a gunshot wound in the left arm and another in the left leg. The bullets recovered from the victim were tested by the State Crime Laboratory. The firearms examiner concluded that they were fired from either a .38 caliber Taurus or Rossi special revolver.

The police obtained a search warrant for appellant's apartment. There they found a box of .38 caliber special ammunition, one spent cartridge, and a letter addressed to Larry Fields. The letter indicated that in case of appellant's death he left all of his possessions to Fields. On appellant's bed the police found an empty gun case for a revolver.

On November 28, 1979, appellant's daughter, Mary Quick, reported her father's whereabouts to the Daytona Beach Police Department. Appellant was arrested. He made a voluntary statement to the police that he had spoken with the victim at 3:15 a.m. on the morning of the murder, and that she had asked him to come over. He remembered leaving his apartment, but did not remember arriving at the victim's. He stated he had been drinking and did not remember anything else except driving through Valdosta on his way to Florida.

In our view, the evidence satisfies the statutory requirements relating to convictions based on circumstantial evidence (see Code § 38-109; *McConnell v. State,* 235 Ga. 366 (220 SE2d 5) (1975)) as well as the constitutional mandate of Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We therefore conclude that the evidence was sufficient to support the conviction.

2. In his first enumeration of error appellant asserts that the trial court erred in refusing to grant a new trial due to juror misconduct. We disagree.

During voir dire juror Lois T. Pitchford stated that no one in her family had been a victim of a crime and that she had no preconceived notions regarding appellant's guilt or innocence. Allegedly, subsequent to trial, a Mr. Sonny Walls informed defense counsel that, before the trial had ended, Mrs. Pitchford told him that some time ago her husband had shot at her, that appellant's trial reminded her of this, and that appellant ought to be shot.

At the hearing on appellant's motion for new trial, Mrs. Pitchford denied being intentionally untruthful at the time of her voir dire examination. She stated it was only when pictures of the victim were presented at trial that memories were revived of the incident with her husband. She testified that she did not permit her feelings to influence her decision and that her decision was based solely on the evidence presented at trial. She denied discussing the case with Mr. Walls while it was still pending. The trial court denied appellant's motion for new trial, and appellant alleges error on two grounds: (a) that Mrs. Pitchford discussed the case while it was

pending and (b) that her untruthful answer on voir dire prejudiced appellant's trial.

(a) In support of his position that it was reversible error for the juror to discuss the case prior to the conclusion of the trial, appellant relies on *Martin v. State,* 242 Ga. 699 (251 SE2d 240) (1978). In *Martin,* we held "that where a juror in the course of a criminal trial improperly communicates to a witness that the defendant is going to be acquitted unless the state shores up its case in a certain manner, and this information is relayed to the prosecution, the defendant has been denied his fundamental right to a fair trial." Id. at 701. As the state had not rebutted the presumption of prejudice in *Martin,* we reversed the conviction.

The instant case is clearly distinguishable from *Martin.* Even assuming that appellant has made a prima facie showing of prejudice because of the juror's communication to a third party during trial, this showing is not unrebutted. Mrs. Pitchford testified that she did not discuss the case while it was pending. Based on this record, we cannot conclude that the trial court abused its discretion in refusing to grant a new trial. See *Hardy v. State,* 242 Ga. 702 (251 SE2d 289) (1978); *Ferguson v. State,* 219 Ga. 33 (131 SE2d 538) (1963).

(b) Appellant argues that Mrs. Pitchford's testimony demonstrates her untruthfulness on voir dire, and that if she had been candid, appellant would have been aware of her prejudice and would have used a peremptory strike to remove her from the jury.

"A defendant is entitled to be tried by a fair and impartial jury, United States v. Rattenni, 480 F.2d 195, 198 (2d Cir. 1973), and to exercise knowledgeable challenges in the pursuit of this judicial ideal. Jackson v. United States, 408 F.2d 306, 308-09 (9th Cir. 1969). It does not follow, however, that every incorrect answer given on voir dire calls inexorably for a new trial; the question of bias and resultant prejudice remains to be determined. Id. at 309 [Cits.] If the answer was given in good faith with no deliberate intent to mislead, the trial court may well find that no prejudice resulted, even though the lack of disclosure might have impaired defendant's right to exercise a knowledgeable peremptory challenge. [Cits.]. . .Although the question of juror impartiality is a mixed question of law and fact, the trial court's findings of impartiality will be set aside only where 'manifest' prejudice to the defendant has been shown [Cits.]." United States v. Mulligan, 573 F2d 775, 777-778 (2d Cir. 1978).

Based upon the testimony of Mrs. Pitchford at the hearing on the motion for new trial, the trial court was authorized to find that the juror did not act with partiality or with manifest prejudice toward appellant. We conclude that the trial court did not abuse its discretion in denying appellant's motion for new trial insofar as it is

based upon alleged juror misconduct during voir dire. *Geiger v. State,* 129 Ga. App. 488 (199 SE2d 861) (1973). See United States v. Vargas, 606 F2d 341 (1st Cir. 1979); Irvin v. Commonwealth, Ky., 582 SW2d 655 (Ky. App. 1979); Walker v. State, 594 P2d 710 (Nev. 1979).

3. There is no merit to appellant's contention that the trial court should have granted a continuance after the state gave him a supplemental list of three witnesses. Only one of these witnesses testified and did so two days after the trial began. *Lakes v. State,* 244 Ga. 217 (259 SE2d 469) (1979).

4. Defense counsel made an oral motion to recuse based upon the trial judge's statement during the continuance hearing that he thought appellant had not been completely truthful with defense counsel. Appellant contends the trial court erred in ruling on his motion to recuse. He relies on *State v. Fleming,* 245 Ga. 700, 702 (267 SE2d 207) (1980), where we held that "when a trial judge . . . is presented with a motion to recuse [in a pending case] . . . the judge's duty will be limited to passing upon the legal sufficiency of the affidavit [accompanying the motion]."

Assuming, but not deciding, that the oral motion was procedurally sufficient, the judge's statement, outside the presence of the jury, does not provide a legally sufficient basis to require a recusal hearing before another judge. The alleged bias of the judge was not "of such a nature and intensity to prevent the defendant . . . from obtaining a [trial] uninfluenced by the court's prejudgment." United States v. Thompson, 483 F2d 527, 529 (3rd Cir. 1973). To warrant disqualification of a trial judge the affidavit supporting the recusal motion "must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." Berger v. United States, 255 U. S. 22, 33-34 (41 SC 230) (65 LE 481) (1921). See United States v. Townsend, 478 F2d 1072 (3rd Cir. 1973). We do not believe that the trial judge's comment in the instant case manifested a degree of personal bias requiring a recusal hearing.

5. Appellant next contends that the admission of the sales ticket showing that appellant purchased a .38 caliber Taurus revolver was error because no proper foundation was laid. We cannot agree. The trial court was clearly authorized to find that the sales slip was prepared and maintained as a business record of the Maddox Pawn Shop and was admissible under Code Ann. § 38-711. See *Martin v. Baldwin,* 215 Ga. 293 (110 SE2d 344) (1959).

6. Appellant's fifth enumeration, that he was denied a thorough cross-examination of two witnesses, is without merit. The record shows that appellant's counsel himself abandoned cross-examination of one witness concerning the victim's relationships with other men. As to the second witness, there is no indication that questioning by

counsel was in any way curtailed by the trial court.

7. In his sixth enumeration appellant contends that the trial court erred in denying his motion for mistrial. This motion was made after Detective Crowe of the Daytona Beach Police Department testified that Mary Quick, appellant's daughter, told him that appellant had arrived in Florida and that he had shot his former wife. Defense counsel objected to this testimony as hearsay. The objection was sustained. Counsel then moved for a mistrial. The trial court denied the motion and told the jury: "I ruled it's inadmissible and I instruct the jury to disregard anything that's made to this police officer."

The detective's testimony was in response to the state's inquiry as to why appellant had been arrested. Under Code Ann. § 38-302 such testimony was admissible for the limited purpose of explaining the officer's conduct. *Harrell v. State,* 241 Ga. 181 (243 SE2d 890) (1978). Thus, the trial court's ruling and curative instruction to the jury (although possibly unclear or erroneously reported) were clearly not harmful to appellant. The trial court did not err in refusing to declare a mistrial. See *Mooney v. State,* 243 Ga. 373 (254 SE2d 337) (1979).

8. In his seventh enumeration appellant argues that the trial court erred in refusing to charge nine of his requests to charge. We have reviewed the entire charge and find that eight of these requests were adequately covered in the charge. See *Keller v. State,* 245 Ga. 522 (265 SE2d 813) (1980). Furthermore, under the facts of this case, it was not error to refuse a ninth request to charge on voluntary manslaughter. See Code Ann. §§ 26-1101, 1102; *Parks v. State,* 230 Ga. 157 (195 SE2d 911) (1973).

9. Appellant's ninth enumeration of error alleges that the trial court improperly excluded, as calling for hearsay, questions to a police detective concerning the result of several crime laboratory tests. Appellant argues that the line of questioning did not call for hearsay and, in any event, was admissible under Code Ann. § 38-302 to explain the detective's conduct during his investigation. We disagree.

"We find no authority which indicates that investigators . . . may testify to the fruits of their investigations without regard for the hearsay rule; rather such witnesses . . . are bound by that rule and must testify from their own first-hand knowledge alone. See, e.g., *Bryant v. State,* 191 Ga. 686, 687 (3) (13 SE2d 820) [1941]." *Cawthon Motor Co. v. Scheufler,* 153 Ga. App. 282, 286 (265 SE2d 96) (1980). "[E]valuations, opinions, diagnoses, conclusions and statements of third parties not before the court are inadmissible." *Moody v. State,* 244 Ga. 247, 249 (260 SE2d 11) (1979). As the detective testified that

he had no first-hand knowledge as to the results of the crime lab tests, he could not testify about them. See Code Ann. § 38-301; Agnor's Ga. Evidence 133, § 9-1 (1976).

Furthermore, the questions propounded by counsel were not proper under Code Ann. § 38-302. The questions simply did not constitute an attempt to ascertain an explanation of the detective's course of conduct.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 25, 1981 —
REHEARING DENIED MARCH 11, 1981.

*Brown & Romeo, H. Eugene Brown, Robert T. Romeo,* for appellant.

*Robert E. Keller, District Attorney, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.