### 71879. RECOBA v. THE STATE.
(345 SE2d 81)

CARLEY, Judge.

Appellant was tried before a jury on a three-count indictment. Count I alleged the offense of trafficking in cocaine, Count II alleged possession of diazepam, a controlled substance, and Count III alleged possession of marijuana. The jury returned verdicts of guilty as to all three counts. Appellant appeals from the judgments of conviction and sentences entered on the jury verdicts.

1. The instant appeal was filed in this court pursuant to a notice of appeal which stated "that this is a criminal case, wherein no constitutional issues have been raised. . . ." At oral argument, however, appellant's counsel requested that the case be transferred to the Supreme Court because constitutional questions had been raised in the trial court with regard to OCGA § 16-13-31, which is the controlling statutory provision as to the crime of trafficking in cocaine. A review of appellant's constitutional challenges shows that they are not such as to invoke the jurisdiction of the Supreme Court. "Under present authorities, we conclude that [OCGA § 16-13-31] is immune from appellant's constitutional challenge[s]. [Cit.]" *Flynt v. State*, 153 Ga. App. 232, 246 (264 SE2d 669) (1980). See *Paras v. State*, 247 Ga. 75 (1) (274 SE2d 451) (1981); *Lavelle v. State*, 250 Ga. 224 (1) (297 SE2d 234) (1982); *Brugman v. State*, 255 Ga. 407, 411 (5) (339 SE2d 244) (1986). Accordingly, we will retain jurisdiction. See generally *Grantham v. State*, 151 Ga. App. 707 (1) (261 SE2d 445) (1979), aff'd 244 Ga. 775 (262 SE2d 777) (1979).

2. The evidence adduced at trial shows that, while appellant was being lawfully detained for purposes of undergoing a field sobriety test, he fled the scene. By so doing, he abandoned not only his car but also several bags which he had placed on the ground in order that the test could be administered. After appellant fled, the bags were opened and the officers found cocaine, marijuana, diazepam, and approximately $8,700 in cash. Several of appellant's enumerations of error are predicated upon the provisions of OCGA § 16-13-3: "Any person who shall abandon, in a public place, any dangerous drug, poison, or controlled substance as defined by Article 2 or Article 3 of [Chapter 13 of the Criminal Code] shall be guilty of a misdemeanor." Appellant first asserts that he should have been granted a directed verdict of acquittal as to the trafficking and possessory offenses because the evidence showed only that he had "abandoned" the contraband.

The statutory provisions pursuant to which appellant was in-

dicted, tried and convicted proscribe the act of possessing certain contraband substances. It may be entirely possible that, under the evidence, appellant's subsequent act of fleeing the scene did constitute the commission of the *separate* crime of "abandonment" as defined in OCGA § 16-13-3. That would not, however, have any mitigating effect on appellant's potential criminal culpability for the previous act of possessing those contraband substances. "The two crimes . . . occurred at different times and involved statutes that have differing behavioral postulates." *Kitchens v. State*, 159 Ga. App. 94, 96 (4) (282 SE2d 730) (1981). " 'Although occurring sequentially, one after the other, each of [the] transactions [would constitute] a separate offense since each [would be] established by proof of differing facts. . . . [Cits.]' [Cit.]" *Talley v. State*, 164 Ga. App. 150, 153 (7) (296 SE2d 173) (1982), aff'd 251 Ga. 42 (302 SE2d 355) (1983). With regard to the crimes for which appellant was actually indicted, tried and convicted, we have reviewed the entire record and find that a rational trior of fact could reasonably have found from the evidence adduced at trial proof of appellant's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The trial court did not err in denying appellant's motion for a directed verdict of acquittal.

It follows that the trial court did not err in refusing any of appellant's requests to charge in connection with the entirely separate crime of abandonment as defined in OCGA § 16-13-3. "[W]here the defendant is charged by a narrowly drawn indictment with a specific crime it is not within the power of the judge or the jury to interpret the facts as presented at trial to support an alternative, separate offense. Criminal indictments are not deemed amendable to conform to the evidence. [Cit.]" *State v. Hightower*, 252 Ga. 220, 223 (312 SE2d 610) (1984). "[T]he defendant may tender whatever defense he believes to be appropriate, but it will not be error for the trial court to refuse a requested charge when the defendant's theory of defense is that he is guilty of a separate, less serious crime." *State v. Hightower*, supra at 223, fn. 2.

3. Several enumerations of error are predicated upon asserted instances of communication between the trial court and the jury, which communications occurred during the jury's deliberations and without the knowledge, consent or presence of appellant. Before addressing the merits, it is necessary to establish exactly what did occur. Contrary to appellant's assertions, the record does not indicate any misconduct on the part of the bailiff. "The record reveals that the only communication by the bailiff was at the direction of the trial judge, which is precisely when the bailiff is authorized to communicate with the jury. [Cit.]" *Williams v. Douglas County School Dist.*, 168 Ga. App. 368 (1) (309 SE2d 386) (1983). Moreover, there is nothing to

support the assertion that, among the communications, was a direction by the trial court that the jury interrupt its deliberations and take a vote. What the record does indicate is that, on more than one occasion during the several days of deliberations, the trial court did direct that the bailiff inquire as to whether a vote had been taken, as to the numerical standing of the most recent vote, and as to whether the jury was making progress. There was no inquiry as to whether the majority was in favor of acquittal or conviction.

Communication between trial court and jury, undertaken without the knowledge and presence of the defendant, cannot be condoned as a general practice. "[A]ll communications with the jury are to be discouraged except in open court with all persons present. . . . [Cits.]" *Berryhill v. State*, 235 Ga. 549, 554 (12) (221 SE2d 185) (1975). " '[T]he communication should be restricted, in the absence of the accused and his counsel, to matters relating to the comfort and convenience of the jury. There should be no communication which would tend in any manner to prejudice the accused (for instance, to hasten a verdict against him, or to induce jurors who might be for him to yield their convictions); and unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial, and the accused would be entitled to another trial.' [Cits.]" *Stewart v. State*, 165 Ga. App. 428, 430 (2) (300 SE2d 331) (1983).

However, the only inquiries shown to have been made in the instant case are of a "presumptively harmless" character. See *Huffaker v. State*, 119 Ga. App. 742 (2) (168 SE2d 895) (1969). So long as there is no effort to establish the number of jurors for conviction and the number for acquittal, a trial court may inquire as to the existing numerical division of the jury. See generally *Wilson v. State*, 145 Ga. App. 315, 319 (4b) (244 SE2d 355) (1978). Accordingly, a reversal of appellant's convictions would have to be based solely on the ground that the presumptively harmless inquiries were not made in open court as they should have been. " 'In considering the right of the accused to be present at every stage of the trial, and to have his counsel present, we must not lose sight of the further principle, equally well established, that a new trial will not be granted on account of an error which manifestly caused no injury to the accused. It would be trifling with justice to set aside a verdict clearly and strongly supported by the evidence, solely on the ground that such an error had been committed by the trial judge. To warrant such action by a reviewing court, it must be manifest that the error was prejudicial in character.' [Cit.]" *Stewart v. State*, supra at 430. Although the procedural vehicle employed by the trial court was erroneous, under the circumstances of the instant case "we do not find the subject communication to be in any manner prejudicial to appellant. [Cit.]" *Stewart v. State*,

supra at 430. "[T]he communication here did not amount to an instruction or charge to the jury and no reversible error is shown. [Cits.]" *Berryhill v. State,* supra at 554 (12).

4. Error is enumerated as to the denial of appellant's demurrer to the indictment. As demonstrated by Division 1 of this opinion, insofar as the predicate of appellant's demurrer was a constitutional attack upon OCGA § 16-13-31, the trial court did not err. *Paras v. State,* supra; *Lavelle v. State,* supra; *Brugman v. State,* supra. Accordingly, we need to address the substance of appellant's demurrer only insofar as it raised an issue of statutory construction concerning OCGA § 16-13-31.

OCGA § 16-13-31 (a) defines the crime of trafficking in cocaine. Depending upon the amount of cocaine involved, subsections (1), (2), and (3) of OCGA § 16-13-31 (a) provide for progressively harsher sentences in terms of the "mandatory minimum term of imprisonment" and the fine to be imposed. At the times relevant to appellant's case, the mandatory minimum sentences ranged from 5 years (now 10) to 15 years (now 25) and the fines ranged from $50,000 (now $100,000) to $250,000 (now $500,000). Appellant contends that there is a conflict or ambiguity between these statutory provisions and OCGA § 16-13-31 (f): "Any person who violates *any provision* of Section 16-13-31, in regard to trafficking in cocaine, . . . shall be punished by imprisonment for not less than five years nor more than 30 years and by a fine not to exceed $500,000." (Emphasis supplied.) It is appellant's contention that section (a) of OCGA § 16-13-31 is "any provision" of the statute and it is thus unclear whether one who has violated that specific provision is to be sentenced pursuant to its progressively harsher subsections (1), (2), or (3), or whether, pursuant to subsection (f), he is to be sentenced to a term of imprisonment anywhere between 5 and 30 years and to pay a fine in any amount which does not exceed $500,000.

In *Olson v. State,* 166 Ga. App. 104, 111 (5) (303 SE2d 309) (1983), we construed the predecessor to existing OCGA § 16-13-31 (f) as a legislative effort to rectify the "omission of a *maximum penalty*" in the statute. (Emphasis supplied.) There is no reason to depart from that construction with regard to the existing statutory provisions. It is clear that OCGA § 16-13-31 (a) (1)-(3) establish the *specific mandatory minimum* sentences which are to be imposed for trafficking in cocaine and that the relation of OCGA § 16-13-31 (f) to that scheme is merely to provide for a *general maximum* as to any sentence which is otherwise imposed for trafficking. Appellant was indicted for trafficking in a quantity of cocaine in excess of 400 grams. He was thus sufficiently apprised that, if convicted, he would receive a sentence which, under then existing law, would consist of at least 15 years but no more than 30 years of imprisonment and the payment of

a fine of $250,000. Former OCGA § 16-13-31 (a) (3), (f). The trial court did not err in denying the demurrer. There is no further contention that the sentence that was imposed upon appellant is not consistent with applicable statutory provisions as thus construed. Accordingly, the sentence, as well as the conviction, is affirmed.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED APRIL 23, 1986 —
REHEARING DENIED MAY 7, 1986 — 

*Victoria D. Little,* for appellant.

*Thomas J. Charron, District Attorney, Nancy I. Jordan, Debra H. Bernes, James F. Morris, James T. Martin, Assistant District Attorneys,* for appellee.