## S97A0195. HOLLAND v. THE STATE.
### (483 SE2d 584)

SEARS, Justice.

The appellant, Clyde Holland, was convicted of the murder of Sheila Diana Bagley. He appeals,[1] contending that the evidence is insufficient to support the conviction; that the trial court erred in admitting autopsy photographs of the victim; and that the trial court erred in ruling that evidence of prior difficulties with the victim was admissible under the necessity exception to the hearsay rule. We conclude that the evidence is sufficient to satisfy *Jackson v. Virginia*,[2]

---

[1] The crime occurred on September 24, 1995, and Holland was indicted on November 2, 1995. A jury found Holland guilty on March 6, 1996, and the trial court sentenced him to life in prison on March 7. Holland filed a motion for new trial on March 19, 1996, which the trial court denied on April 9, 1996. Holland filed a notice of appeal on April 19, 1996, and the court reporter certified the transcript on September 5, 1996. The appeal was initially docketed in the Court of Appeals, but was transferred to this Court by order dated October 23, 1996. The appeal was docketed in this Court on October 28, 1996, and was submitted for decision on briefs on December 23, 1996.

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

and that the trial court did not err in admitting either the autopsy photographs or the evidence of prior difficulties. Accordingly, we affirm.

About 9:30 p.m. on the evening of September 24, 1995, emergency medical personnel found the victim dead in the apartment where she had lived with Holland for six years. The victim had died from massive head trauma and bleeding in the brain.

The victim's sister, Lisa Arnold, testified that during the six years that Bagley dated Holland, Bagley moved out of the apartment she shared with Holland about twice a month and would move in with some member of her family, usually Arnold. Arnold testified that on one occasion in early 1993, after the victim moved in with Arnold for a short period of time, she saw Holland punch the victim in the mouth and knock her into a bathtub, causing her to cut her lip. Arnold also testified that Bagley moved in with her again one week before her death because of a fight with Holland. According to Arnold and one of the victim's neighbors, John House, the victim had a dark black eye at the time. Arnold stated that when she picked up Bagley she was crying and was "real upset." According to Arnold, Bagley said, "Look what Frank has done to me." House also testified that the victim said that Holland had hit her. Arnold stated that after staying with her for a few days, the victim moved back in with Holland.

Hayes Huskey, a neighbor of Holland and the victim, testified that on the evening of the victim's death, he visited Holland and the victim at their apartment. Huskey stated that he stayed there for about an hour and that he, Holland, and the victim were drinking vodka. Huskey testified that during that time, he, Holland, and Bagley had a disagreement that led Holland to put a putty knife to Huskey's throat. According to Huskey, the victim grabbed Holland's hand, causing him to fall to the floor and hit his head against the wall. Huskey stated that Holland smashed a stereo with his fist, causing his hand to bleed; threw the stereo and a television set out the door into the parking lot; and then smashed a bottle of vodka on the floor. Huskey added that Holland might have been mad at the victim because he hit his head against the wall. Huskey stated that Holland then retrieved the television set from the parking lot and put it next to the bed in the one bedroom apartment. Huskey further stated that he then left because Holland was acting crazy.

John House, who lived in an apartment two doors down from Holland and the victim, testified that he heard two loud crashes in the parking lot around 8:30 p.m. When he looked outside, he saw a stereo and television set in the parking lot, and he saw Holland take the television set back into Holland's apartment. House also stated that he heard some shouting coming from Holland's apartment that

sounded like an argument between Holland and the victim. House testified that he thought the arguing stopped about 9:00 p.m., and that at about 9:15 p.m., Holland came to the door of House's apartment appearing drunk and worried. According to House, Holland said the victim would not wake up and, "I think she's dead." House stated that he and Holland went to Holland's apartment and that he (House) checked the victim and found no pulse, after which he went to an outside phone and called 911. House testified that he returned to the apartment, that Holland was still there, and that he told Holland to wait while he went to direct the ambulance to the apartment. According to House, however, when he returned with the ambulance personnel, Holland had left the apartment. House said he searched for Holland, but could not find him, and that he did not see Holland again that night.

Huskey testified that about 30 minutes after he left Holland's and the victim's apartment, Holland came toward Huskey's apartment and asked him for a ride, but Huskey refused. Huskey added that, at that point, Tommy Smithem, who lived in the same complex as Holland, approached Holland and told him to go to his apartment because something was wrong with the victim. Smithem's testimony confirmed Huskey's account, and Smithem added that Holland appeared nervous and drunk. Smithem stated that he thought Holland began walking towards him so he left and went to Holland's apartment. Smithem testified that Holland did not come to check on the victim. John Broom, who lived next to Huskey in the same apartment complex as Holland, testified that about 9:30 p.m. on September 24 Holland came by Huskey's apartment and appeared nervous and "shaky." Broom stated that Holland asked Huskey to take Holland by Holland's father's home, but that Huskey refused. Broom stated that Smithem then approached Holland and told him that the police and an ambulance were at his apartment and that Holland should go to his apartment to see what had happened. According to Broom, Holland then left, walking away from his apartment.

Captain Terry Neal of the Dalton Police Department testified that the bed where the victim lay was in disarray and that the mattress of the bed had been pushed toward the wall. He stated that there was a lot of debris on the floor of the apartment, making it appear that there had been an altercation in the room. Further, Captain Neal testified that Bagley had an injury behind her right ear, but that it produced very little blood and that the blood it did produce was on the wound itself and not on the sheets where the body was found. He also added that he recovered a putty knife from an open chest drawer in the apartment and an iron that was found underneath the bed.

On the afternoon of September 25, police officers found Holland hiding in an old barn in a heavily wooded area and arrested him. Holland made two statements to the police. In one, he claimed that he left Sheila in the apartment on September 24 about 1:00 p.m. and did not arrive home until about 9:00 p.m., when he found the victim lying on her back. Holland stated that he tried to give the victim CPR, but that when he discovered that she was dead, he called 911 from an outside phone. Holland claimed that he left before the ambulance got there because he was afraid. In an additional statement, made shortly after the first one, Holland admitted that the victim had briefly moved out of the apartment following an argument two weeks before the victim's death, but he denied hitting her at that time or on the day she died.

Dr. Floy James, the pathologist who performed the autopsy on Bagley, testified that his external examination of the victim revealed that she had a fractured neck and one injury behind her right ear. He testified that the injury behind the ear was not a "dramatic-looking injury" and that there was only a small amount of blood behind the ear. He added that an internal examination of the victim's scalp and skull revealed that the victim had been hit in two different places on the head, causing bleeding into the bone of the skull, into the scalp, and into the temporalis muscle. Dr. James further stated that he removed the victim's skull bone, discovering a significant amount of bleeding inside her brain. According to Dr. James, a blow correlating to one of the bleeding patterns on the skull and scalp probably set the victim into motion, causing her to hit something hard. Dr. James stated that the blow from the hard object created the other injury and bleeding pattern on the skull and scalp, and that it probably broke the victim's neck, rupturing blood vessels inside her brain, thus causing her death.

1. In his third enumeration of error, Holland contends that the evidence is insufficient to support the conviction. Viewing the evidence in the light most favorable to the verdict, however, we conclude that the evidence was sufficient for a rational trier of fact to have found Holland guilty of murder beyond a reasonable doubt.[3]

2. In his first enumeration of error, Holland contends that the trial court erred in allowing photographs of the victim's scalp, as deflected during the autopsy, into evidence. We find no error.

Generally, photographs "which depict the victim after autopsy incisions are made . . . will not be admissible unless necessary to show some material fact which becomes apparent only because of the

---

[3] *Jackson v. Virginia,* supra.

autopsy."[4] Here, the pathologist who performed the autopsy testified that the bleeding caused by Bagley's injuries was internal and was not visible from an external examination. Further, because the photographs assisted the pathologist in explaining the victim's injuries and the cause of her death, the photographs were admissible.[5]

3. As previously stated in this opinion, Lisa Arnold, the victim's sister, testified that the victim told her that Holland had given her a black eye. Over defense counsel's objection, the trial court ruled that this testimony was admissible under the necessity exception to the hearsay rule. Holland contends that the trial court erred in so ruling.

Because the hearsay declarant is dead, the necessity element of the necessity exception is satisfied in this case.[6] The crucial question is whether the statement was made under circumstances that indicate it was trustworthy.[7] We need not, however, decide that issue in this case, as we conclude that if any error occurred in admitting this testimony, it was harmless. We reach this conclusion because Arnold also testified that she had personally witnessed an earlier altercation between Holland and the victim during which Holland brutally hit Bagley in the face.[8]

Moreover, although Holland appears to contend that the hearsay evidence should not have been admitted because it improperly placed his character into evidence,[9] Holland fails to support this contention with argument or citation of authority. This contention is therefore deemed abandoned.[10]

4. For the foregoing reasons, we affirm Holland's conviction for the murder of Sheila Bagley.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 14, 1997.

*Michael A. Corbin,* for appellant.
*Kermit N. McManus, District Attorney, Michael J. Bowers, Attor-*

---

[4] *Brown v. State,* 250 Ga. 862, 867 (5) (302 SE2d 347) (1983). Accord *Thornton v. State,* 264 Ga. 563, 571 (9) (449 SE2d 98) (1994).

[5] *Thornton,* 264 Ga. at 571.

[6] See *Roper v. State,* 263 Ga. 201, 202 (2) (429 SE2d 668) (1993).

[7] Id.

[8] See *Roper,* 263 Ga. at 203; *Hayes v. State,* 265 Ga. 1, 3 (3) (453 SE2d 11) (1995).

[9] See *McKissick v. State,* 263 Ga. 188 (2) (429 SE2d 655) (1993) (evidence properly admitted to show prior difficulties between the defendant and the victim does not impermissibly place the defendant's character into evidence).

[10] Rule 22 of the Supreme Court of Georgia.

ney General, Angelica M. Woo, Assistant Attorney General, for appellee.