S99A0553. PENNIE v. THE STATE.
(520 SE2d 448)

THOMPSON, Justice.

A jury found Demetrice Lachelle Pennie guilty of malice and felony murder in the shooting death of her paramour, Edward Charles Pittman. She was sentenced to life in prison for malice murder.[1] Because we conclude that Pennie was deprived of her constitutional right to the courts when certain communications took place with a juror outside her presence and in the absence of a waiver, we reverse.

Viewed in a light most favorable to the verdict, the evidence showed that Pennie was employed by the victim as a freelance computer consultant. Pennie soon began having an affair with Pittman, who was married. Six weeks later, Pittman visited Pennie's home where he was fatally shot.

Pennie waived *Miranda* rights and gave three custodial statements, each time recounting a different version of the events. She initially denied any involvement in the crime. In her second interview she implicated her neighbor, Alvin Taylor. When it became apparent a month later that her story was inconsistent with evidence

---

[1] The shooting occurred on July 17, 1994. A true bill of indictment was returned on March 30, 1995, charging Pennie with malice murder and felony murder with the underlying felony of aggravated assault. Trial was held on July 28-30, 1997. The jury returned its verdict on July 30, 1997, declaring Pennie guilty of both counts. The trial court vacated the felony murder conviction, and Pennie was sentenced on August 1, 1997 to life in confinement. A motion for new trial was filed on August 14, 1997, amended on August 26, 1997 and May 11, 1998, and denied on November 13, 1998. A timely notice of appeal was filed. The case was docketed in this Court on January 11, 1999, and oral argument was heard on April 12, 1999.

at the crime scene, a third interview was conducted. In that interview she admitted shooting Pittman, but claimed she did so after he slapped her and refused to leave her apartment. She admitted walking from the living room to her bedroom, where she obtained a loaded handgun from a closet, removed it from its case, and returned to the living room where she shot and killed Pittman. She stated that the body remained in her living room until later that night when she solicited Taylor's help and the two placed it in the trunk of her car; that the following day she drove her car, along with the body, to Birmingham, Alabama and back to Atlanta, stopping at her office and for various business appointments; and that during the course of that day, she used Pittman's ATM card to withdraw $300 from his bank account. She also claimed that later that night, she and Taylor drove to South Carolina where they disposed of the body by dumping it into Lake Hartwell; that when she returned to Atlanta, she stole a license plate from another vehicle and placed it on Pittman's car to disguise the identity of his vehicle, and she concealed evidence of the shooting by repairing damage to her apartment. It was also shown that she removed a cellular telephone, briefcase and other items from Pittman's car, some of which were later found hidden in her apartment.

The body was subsequently retrieved from Lake Hartwell. The cause of death was a gunshot to the chest which was fired from a minimum distance of one and one-half feet and which entered at a downward angle. Another shot, fired from the same distance, entered the victim's hand through the palm. The medical examiner hypothesized that the first shot could have penetrated the hand, causing the victim to bend over in pain, whereupon the fatal shot was fired downward into the chest.

Taylor testified at trial, denying any knowledge of or involvement in the crime, and accounting for his whereabouts on the days in question.

1. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), for a rational trier of fact to have found Pennie guilty beyond a reasonable doubt of malice murder.

2. At the conclusion of the evidence, a juror apparently notified the court that a spectator in the courtroom had attempted to speak to that juror in the hallway. The juror was brought into chambers and was questioned by the court in the presence of both counsel, but in the absence of the defendant. The juror explained that this spectator made eye contact with him and greeted him as he walked by. He added, "I thought I recognized him, and he might have recognized me from somewhere." The juror also stated that he resides in the area where the crime took place and that he also may have recognized the victim from photographs introduced in evidence. When asked by the

court if the incident in the hallway would influence his decision in the case, the juror expressed concerns that he may later see the man in his neighborhood and possibly suffer repercussions as a result of his verdict. He was then asked whether he could put these factors aside and decide the case based on the evidence, to which he replied, "I think I can, I'm pretty sure I can." The prosecutor, who had not posed any questions to the juror, declined the court's offer to participate in the inquiry. The juror was then returned to the jury room for deliberations. At that point, defense counsel announced that he waived Pennie's presence at the conference.

In *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998), we reiterated the long-standing rule that embodied

> [w]ithin the Georgia constitutional right to the courts [Art. I, Sec. I, Par. XII[2]] is a criminal defendant's "right to be *present* and see and hear, *all the proceedings* which are had against him on the trial before the Court." [Cits.] A colloquy between the trial judge and the jury is a part of the proceedings to which the defendant and counsel are entitled to be present.

Accord *Wilson v. State*, 212 Ga. 73, 74 (90 SE2d 557) (1955) ("[t]his principle has been recognized since the establishment of this Court"). Thus, where the accused is involuntarily absent from the proceedings, the trial judge should have no communications with a juror about the case, except as to matters relating to the comfort and convenience of the jury. *Hanifa,* supra at 807.

It is true that a defendant may personally waive his right to be present at a stage in the trial, or counsel may waive this right for the defendant. *Wilson*, supra at 77. But "in order for the waiver of counsel to be binding on the defendant, it must be made in his presence or by his express authority, or be subsequently acquiesced in by him." Id. at 77-78. See also *Brooks v. State*, 271 Ga. 456 (2) (519 SE2d 907) (1999). Under the facts of this case, we find no such waiver. Both Pennie and her trial counsel testified at a hearing on the motion for new trial that Pennie was not present during the colloquy in chambers. Trial counsel testified that he had never discussed the matter with his client; and that he never sought or received her permission to waive her presence. Pennie testified that she was not aware of the in-chambers meeting until after trial when appellate counsel reviewed the transcript; and that she would have elected to be present at the

---

[2] 1983 Georgia Constitution, Art. I, Sec. I, Par. XII, provides: "No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state."

meeting had she known of it.

As in *Wilson*, supra at 78, the waiver by counsel

> was made after the trial had illegally proceeded in the defendant's absence. The defendant had no knowledge of the illegal procedure of the trial or the unauthorized waiver of counsel until after the verdict had been rendered, and [she] repudiated the waiver of counsel . . . at the first opportunity.

Since the attempted waiver by counsel was made without the knowledge or consent of the defendant, it was not a valid waiver of her right to be present at all stages of the trial proceedings, guaranteed under Art. I, Sec. I, Par. XII of the Georgia Constitution. *Brooks*, supra; *Hanifa*, supra; *Wilson*, supra; *Tiller v. State*, 96 Ga. 430 (1) (23 SE 825) (1895). See generally *Perry v. State*, 216 Ga. App. 749 (1) (456 SE2d 89) (1995). Compare *Robertson v. State*, 268 Ga. 772 (4) (493 SE2d 697) (1997) (no error found where court asked limited qualifying questions of jury panel in absence of defendant; however practice was criticized); *Ferrell v. State*, 261 Ga. 115 (12) (401 SE2d 741) (1991) (pretrial conference, limited in scope to scheduling, is not a critical stage of the proceedings requiring defendant's presence).

Nor do we deem the error harmless. Unless " 'the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial.' " *Hanifa*, supra at 807. Where the juror revealed a possible connection to the victim and expressed concern that his verdict may pose a danger to him in the future, Pennie had an absolute right to be present at the meeting to assist trial counsel in effectively examining the juror. Under *Hanifa*, her involuntary absence must be presumed prejudicial, and the State offered absolutely nothing to rebut the presumption of harm. See also *Wilson*, supra at 75 ("[t]o say that no injury results when it appears that what occurred in [defendant's] absence was regular and legal would, in effect, practically do away with this great and important right"); *Tiller*, supra at 432 (involuntary absence of defendant at every stage of proceedings "is of sufficient gravity to require the granting of a new trial"); *Seay v. State*, 111 Ga. App. 22, 25 (3) (140 SE2d 283) (1965) (colloquy between judge and jury, even though nothing erroneous occurred therein, is itself reversible error when held in the absence of a defendant who has not waived his presence); *Miller v. State*, 13 Ga. App. 440 (2) (79 SE 232) (1913) (there should be no communication with a juror outside the presence of the accused "which would *tend in any manner* to prejudice the accused"). Compare *Wanzer v. State*, 232 Ga. 523 (1) (207 SE2d 466) (1974) (mistrial not authorized where defendant involuntarily absent during

presentation of motion in chambers but present in courtroom for subsequent questioning of jurors); *Burtts v. State*, 269 Ga. 402 (3) (499 SE2d 326) (1998) (where the court denied jury's request to see transcript of testimony without notifying defendant or counsel, the character of the communication to the jury shows it could not have been prejudicial).

Finally, we find no waiver of appellate review. Pennie undisputedly had no knowledge of the irregularity in the trial proceedings until after the verdict was rendered. While we found a waiver of appellate review in *Hanifa*, we did so because the defendant "fail[ed] to voice an objection or seek a mistrial *after being informed* by the trial judge, *prior to the return of the jury's verdicts*, of [the irregularity]." (Emphasis supplied.) Id. at 807. Unlike *Hanifa*, Pennie's lack of knowledge prevented her from raising the issue during trial. And she "repudiated the waiver of counsel . . . at the first opportunity," in her motion for new trial. *Wilson*, supra at 78.

3. We do not find error in the court's rejection of Pennie's battered person defense.

Prior to trial, the court granted the State's motion in limine to exclude expert testimony that Pennie suffered from post-traumatic stress disorder. Defense counsel specifically stated that he sought to introduce the expert testimony to explain Pennie's state of mind after the shooting, not as evidence of battered person syndrome. In granting the motion in limine, the court ruled that the jury could decide the issues before it without the aid of an expert.

During trial, the court allowed a proffer of the expert evidence outside the presence of the jury. The expert testified that two isolated, unsubstantiated traumatic incidents involving men other than Pittman had caused Pennie to develop post-traumatic stress syndrome as well as certain symptoms of battered person syndrome. Although the expert acknowledged that Pennie experienced no prior history of abuse at the hands of the victim during their six-week relationship, these unrelated incidents caused Pennie to become more fearful of harm than someone who had not experienced the prior traumas. The court again rejected Pennie's argument that the evidence was necessary to explain Pennie's conduct after the shooting.

Pennie failed to develop a self-defense claim based on the battered person syndrome. *Mobley v. State*, 269 Ga. 738, 740 (2) (505 SE2d 722) (1998); *Smith v. State*, 268 Ga. 196 (486 SE2d 819) (1997); *Selman v. State*, 267 Ga. 198 (475 SE2d 892) (1996). The court properly determined that expert testimony was not required to assist the jurors in evaluating Pennie's justification defense.

4. The court did not err in admitting two post-autopsy photographs of the victim's hand which showed the trajectory of the bullet. The State offered the photographs to show the position of the victim's

hand at the time the shot was fired. The photographs were "necessary to show some material fact which becomes apparent only because of the autopsy." *Holland v. State*, 267 Ga. 833, 836-837 (483 SE2d 584) (1997), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 10 (5) (515 SE2d 155) (1999).

5. We do not address Pennie's remaining enumerations of error since they are not likely to recur on retrial.

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

I agree with Divisions 1, 3, and 4 of the majority opinion, but disagree with the holding of Division 2. I believe that the absence of Pennie during the colloquy with the juror was, at most, harmless error. Therefore, I dissent to the judgment of reversal.

The majority does not discuss whether there was any harmful effect resulting from Pennie's absence, but merely concludes that it must presume prejudice. However, no "presumption of prejudice" ever arises if the character of the communication with a juror clearly shows that it could not have been prejudicial to the accused. *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998). Moreover, even where the presumption of prejudice does arise in the context of such communication, it is rebuttable. *Jones v. State*, 247 Ga. 268, 270 (2) (a) (275 SE2d 67) (1981). Its effect is to place the burden of showing a lack of harm on the State. *Jones v. State*, 258 Ga. 96 (366 SE2d 144) (1988). See also *Turpin v. Todd*, 268 Ga. 820, 830 (2) (493 SE2d 900) (1997). "[I]n some instances, because of the particular facts of the case, it has been held that some proceedings in the trial of an accused in his absence will not require the grant of a new trial." *Wanzer v. State*, 232 Ga. 523, 526 (1) (207 SE2d 466) (1974) (harmless error where the accused's attorney extensively questioned the bailiff and the prosecutor regarding an unauthorized communication, but made no effort to have his client present until the jurors were examined). Not all communications between the trial judge and a juror occurring in the absence of the accused result in reversible error, but only those which materially affect the case or provide a causal link to the verdict. *Logan v. State*, 266 Ga. 566, 567-568 (2) (468 SE2d 755) (1996) (harmless error where trial court responded, in the absence of the accused and his counsel, to a juror's question regarding inability to reach a verdict). An improper communication is reversible error only if there is a reasonable probability that it contributed to the verdict. *Burtts v. State*, 269 Ga. 402, 403 (3) (499 SE2d 326) (1998); *Logan v. State*, supra at 568 (2).

Even *Hanifa v. State*, supra at 808 (6), upon which the majority relies, recognizes that this Court must examine the contents of the

trial court's communication with the juror to determine whether it constitutes harmful or harmless error. Although the State had the burden to show the absence of harm, if "the substance of the communication is established without contradiction, the facts themselves may establish the lack of prejudice or harm to the defendant. [Cit.]" *Jones v. State*, 258 Ga., supra at 97. In the colloquy here, both the trial court and Pennie's own defense counsel questioned the juror. The questioning established without dispute that the juror merely made eye contact with a spectator in the hallway and that only the juror spoke, saying, "hey, how you doing." The juror thought that they may have recognized one another, but stated that the spectator did nothing intended to influence him, and that he could still make a decision based upon the evidence and put aside any other factors. In addition to this innocent incident, the juror also mentioned that he may have recognized a picture of the victim, and expressed some concern that he might be recognized because of his jury service. After the colloquy, the trial court and Pennie's attorney agreed that the juror was just being extremely conscientious.

In determining prejudice, it is appropriate to examine the propriety of the trial court's action or inaction undertaken during the absence of the accused. See *Burtts v. State*, supra at 403 (3). The juror's possible recognition of the victim and a spectator and his concern over possible recognition at a later date are more innocuous than many other instances of juror relationships and fears which have not furnished a ground for disqualification. *Matthews v. State*, 268 Ga. 798, 799 (2) (493 SE2d 136) (1997); *Thornton v. State*, 264 Ga. 563, 573 (13) (b) (449 SE2d 98) (1994); *Fuller v. State*, 230 Ga. App. 219 (1) (496 SE2d 303) (1998); *Waddell v. State*, 224 Ga. App. 172, 175 (3) (b) (480 SE2d 224) (1996); *Bell v. State*, 203 Ga. App. 109, 110 (2) (416 SE2d 344) (1992). Under the circumstances, it is impossible to discern any harm from Pennie's absence. It would be rank speculation to hold that her presence could have resulted in the juror's disqualification or made a guilty verdict any less likely. The only conclusion to be drawn from these facts is that there is no reasonable probability that the absence of the accused from the colloquy with the juror contributed to the verdict.

Accordingly, the court reverses Pennie's conviction only because the trial judge did not conduct the manifestly harmless colloquy with the individual juror in open court. *Recoba v. State*, 179 Ga. App. 31, 33 (3) (345 SE2d 81) (1986). As already explained, however, the presumption of prejudice from the absence of an accused is not so absolute as the majority portrays it.

> " 'In considering the right of the accused to be present at every stage of the trial, and to have his counsel present, we

must not lose sight of the further principle, equally well established, that a new trial will not be granted on account of an error which manifestly caused no injury to the accused. It would be trifling with justice to set aside a verdict clearly and strongly supported by the evidence, solely on the ground that such an error had been committed by the trial judge. To warrant such action by a reviewing court, it must be manifest that the error was prejudicial in character.' (Cit.)" [Cit.]

*Recoba v. State*, supra at 33 (3). Even if the trial court committed a procedural error, I do not believe that it was prejudicial to Pennie in any manner and, therefore, I dissent.

DECIDED SEPTEMBER 13, 1999.

*Brian Steel*, for appellant.

*Patrick H. Head, District Attorney, Debra H. Bernes, Nancy I. Jordan, Frank R. Cox, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Angelica M. Woo, Assistant Attorney General,* for appellee.