STATE OF NEBRASKA, APPELLEE, V. DEAN L. BEAM, APPELLANT.

292 N. W. 2d 302

Filed May 13, 1980. No. 42822.

Thomas M. Kenney and Bennett G. Hornstein, for appellant.

Paul L. Douglas, Attorney General, Mel Kammerlohr, and Marcia A. Johnson, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN,

Brodkey, White, and Hastings, JJ., and Colwell, District Judge.

McCown, J.

The defendant was found guilty by a jury on a charge of second degree murder and sentenced to 15 years imprisonment.

At about 9:10 p.m. on January 15, 1979, the 911 emergency communication division in Omaha received a telephone call. The caller stated in part: "I shot my wife . . . 3817 Monroe . . . get here fast . . . my wife is dying." Two uniformed police officers were first to respond to the call. They arrived at 3817 Monroe Street at 9:13 p.m. They knocked on the door. The defendant refused to let them in. A few moments later the rescue squad personnel arrived. While they were talking with the police officers the defendant opened the door and said: "You guys are too late. I have already shot my wife. You can't help me and you can't help her because she is already dead." The officers pushed the blood-spattered defendant aside and entered the residence, followed by the rescue personnel. The body of the defendant's wife was lying on the kitchen floor with a .22 caliber revolver on the floor beside the body. There were six empty cartridge casings in the cylinder of the gun. There were five bullet holes in the floor in the area near the body and two bullet slug fragments, later identified as being fired from the revolver, were found on the basement floor. While the officers and rescue personnel were in the kitchen the defendant repeatedly stated: "Oh, why did I do it?"

A later autopsy established that the cause of death was a bullet wound in the top of the head. The bullet passed straight down through the brain and lodged at the base of the skull. There were no powder burns or smoke marks around the wound.

A weapons expert examined and test fired the re-

volver. It was a single-action weapon and the hammer had to be fully cocked before the weapon could be fired. It test fired normally, did not fire accidentally, and left either smoke rings or powder rings when fired from a distance of less than 2 feet. In testing, the only way the weapons technician could make the gun discharge without pulling the trigger was to strike it very hard with a brass hammer on the hammer of the gun when it was at rest on the firing pin.

A retired gunsmith and ballistics engineer who testified for the defendant later examined the weapon. He testified that the gun was in a defective condition, was nearly impossible to fire intentionally, and fired accidentally more often than purposely. He had also performed an experiment in which an assistant attempted to pull the gun away from him and the weapon accidentally fired each time that was attempted.

The defendant's testimony was that during the day he had noticed that the revolver was missing from a locked gun case and had requested his wife to get the weapon. She brought it to the kitchen and handed it to him. He testified that he was arguing with her while he was standing near the kitchen table with the revolver in his hand and his wife was seated at the table. His wife reached up, jerked the gun, and caused it to discharge into her head. He recalled only one shot being fired but conceded that he did not remember the events too well because he had had a great deal to drink.

The defendant filed a motion in limine prior to trial to exclude anticipated hearsay evidence of several State's witnesses as to statements made to them by the decedent on various occasions prior to January 15, 1979. At a pretrial hearing, the motion in limine was granted with respect to several witnesses but denied with respect to certain testimony of Sally Rau, Melvin Barnes, and Ellen Primeau.

These three witnesses testified at trial over defendant's objections.

Sally Rau, an attorney, testified that the decedent had had an appointment with her at her office on December 13, 1978. The attorney observed at that time that the defendant's wife was bruised and marked on both of her arms and she took a photograph showing those bruises, which was received in evidence. Defendant's wife told her that the bruises were caused by a beating she had received from her husband the night before. She also told the attorney that she wanted to file for divorce and that she wanted to obtain a restraining order against the defendant, and that there were several weapons at the residence. The attorney obtained the necessary information from the defendant's wife to prepare the petition for divorce and the restraining order and told her to call later if she desired to proceed with a divorce. The attorney was gone for a time during the holidays, and the defendant's wife did not contact her again. The attorney contacted the police when she learned the defendant's wife had been killed. The defendant testified that he remembered arguing with his wife and grabbing her arms and shaking her on December 13, 1978, which might have caused the bruises which the attorney had seen.

Melvin Barnes, a deputy sheriff, testified that at about 1:30 a.m. on January 13, 1979, while he was on duty, he went to investigate a truck parked in a church parking lot behind the church. He found the defendant's wife alone in the truck. She had been crying. In response to his questions, she told him she and her husband had had a fight and he had beaten her up. She also told him that she had no money but only a checkbook. The deputy then took her to a motel and arranged for her to get a room. The motel registration and check receipt were introduced in evidence. The defendant later testified that he had had an argument with his wife on Janu-

ary 12, 1979, when his wife had left home until the following day, but he testified that there had been no violence in connection with that argument.

Ellen Primeau, a coworker with and friend of the defendant's wife, testified that, within a 2-week period before her death, the defendant's wife told her that she had consulted an attorney and intended to obtain a divorce from her husband.

The jury found the defendant guilty of second degree murder. The District Court for Douglas County, Nebraska, sentenced him to 15 years imprisonment and this appeal followed.

The defendant's assignments of error all center on the contention that the admission of the hearsay testimony of Sally Rau, Melvin Barnes, and Ellen Primeau violated the hearsay rule and its exceptions as set out in the Nebraska statutes, and constituted prejudicial error.

Neb. Rev. Stat. § 27-802 (Reissue 1975) provides: "Hearsay is not admissible except as provided by these rules or by other rules adopted by the statutes of the State of Nebraska." The testimony of the three witnesses as to the statements made to them by the decedent was hearsay and is, therefore, inadmissible unless it comes within an exception to the hearsay rules.

Neb. Rev. Stat. § 27-804(2) (Reissue 1975) provides, in part:

Subject to the provisions of section 27-403, the following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .

(e) A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (i) the statement is offered as evidence of a material fact, (ii) the statement is more

probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (iii) the general purposes of these rules and · the interests of justice will best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Neb. Rev. Stat. § 27-403 (Reissue 1975) provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Neb. Rev. Stat. § 27-803(22) (Reissue 1975), identical to § 27-804(2)(e), applies to statements which are not excluded by the hearsay rule even though the declarant is available as a witness. Where the declarant is dead, as in the present case, the specific exceptions of both statutes are applicable in determining "equivalent circumstantial guarantees of trustworthiness."

At this point, it should be noted that the statutory procedural requirements dealing with advance notice and an opportunity to be heard were complied with in this case. The only issue here is the admissibility of the statements.

The death of the declarant established the necessity for the introduction of the hearsay statements and the record establishes that the statements were offered as evidence of a material fact and that they were more probative on the point for which they

were offered than any other evidence the State could procure through reasonable efforts.

The critical issue here is whether the circumstances surrounding the making of the hearsay statements by the decedent provided guarantees of trustworthiness comparable to the other specific exceptions set out in §§ 27-803 and 804. One of the primary reasons for the existence of the specific exceptions to the hearsay rule is that the statements were made "[w]here the circumstances are such that a sincere and accurate statement would naturally be uttered, and no plan of falsification be formed . . . ." 5 Wigmore on Evidence § 1422 (Chadbourn Rev. 1974).

In this case, the statements of the decedent to the attorney were made in the course of a professional consultation for purposes of legal advice and possible litigation. Under such circumstances, it is reasonable to assume that an accurate statement of facts would normally be given. The statements here were further corroborated by other evidence, including the photograph of the bruises. There was no apparent reason to falsify any statement and ample reasons for accuracy and truthfulness. The attorney who testified as to the statements made by decedent was acting in the course of professional employment, was unacquainted with the declarant previously, was a disinterested witness, and can be assumed to have reliably reported the statements made. The evidence of all the surrounding circumstances tends to corroborate the veracity of the declarant's statements and to indicate the absence of incentives to speak falsely.

The statements of the decedent to the deputy sheriff also involved other corroborating evidence and circumstances. The deputy sheriff was in the course of performance of his official duties, a disinterested witness, and not acquainted with the decedent at the time he found her in the truck in a church

parking lot in the middle of the night. She had been crying. She was upset and emotionally disturbed. It is contended that her statements were admissible under the exception for excited utterances even though there is no direct evidence as to the time between the occurrence of the event and the making of the statements. In addition to the fact that she was emotionally disturbed and excited, the evidence established that the declarant was a married woman who resided in the neighborhood with her husband and that she was afraid to return to her residence. The veracity of her statements was also corroborated by evidence that she spent the night in the motel, as shown by the receipt and registration. The statements made to the deputy sheriff were made only 2 days before her death, and the deputy sheriff, as a law enforcement officer, can be assumed to have accurately reported the statements and circumstances. Again, the evidence tends to corroborate the veracity of the declarant's statements and the absence of incentives to speak falsely.

Corroborative circumstantial evidence has been recognized as significant by other courts. See, *United States v. West,* 574 F.2d 1131 (4th Cir. 1978); *United States v. Garner,* F.2d 1141 (4th Cir. 1978), *cert. denied,* 439 U.S. 936 (1978). Weinstein has interpreted those cases to mean that "when hearsay seems to the court highly probative and is corroborated in part, it becomes admissible, and is by the same token immune to confrontation clause challenge." 4 Weinstein's Evidence, United States Rules, 804-129 (1979). If the right to confront and cross-examine the hearsay declarant were necessary in every case, it is obvious that no statement of any deceased declarant would ever be admissible over objection.

We believe the statements of the decedent made to her attorney and the statements made to the deputy sheriff, under the circumstances outlined by the evi-

dence here, had substantial guarantees of trustworthiness equivalent to the guarantees of trustworthiness of some of the other specific hearsay exceptions. The trial court has broad powers of discretion in weighing and balancing the probative value of such evidence and the possible prejudice, and the statements were admissible under the provisions of § 27-804(2)(e).

With respect to the statement of the decedent to Ellen Primeau that she had consulted an attorney and intended to obtain a divorce, there is no evidence which would take that statement out of the ordinary hearsay rule. There is no evidence as to the circumstances under which the statement was made nor is there any corroborative evidence of any kind. There is no evidentiary guarantee of trustworthiness equivalent to any other specific exceptions to the hearsay rule. The statement was hearsay and was not admissible under any of the exceptions to the hearsay rule. Nevertheless, the evidence was merely cumulative and its admission into evidence was not prejudicial.

The judgment of the District Court is affirmed.

AFFIRMED.

WHITE, J., concurs in result.