## S96A1365. DIX v. THE STATE.
(479 SE2d 739)

FLETCHER, Presiding Justice.

A jury convicted Dennis Dix of the malice murder of his former wife, Virginia Ann Pannell, and possession of a firearm by a convicted felon and during the commission of a crime.[1] At trial, Pannell's divorce attorney testified that Pannell said Dix had choked her, threatened to kill her, and dry-fired a gun at her head and that no restraining order would stop him. Dix challenges the testimony as inadmissible hearsay. Because the evidence of the surrounding circumstances tends to verify the trustworthiness of Pannell's statements after her divorce and her statements before the divorce were cumulative of other evidence, we affirm.

1. The evidence presented at trial shows that a friend drove Dix to Pannell's house on the night that she was shot. Dix carried a rifle and wore a .45 caliber handgun in his back belt loop. He was in the bathroom with the light out when Pannell returned from work around midnight. Two hours later, claiming to be a neighbor, Dix called and asked for an ambulance to come to Pannell's house to help a sick lady. A deputy sheriff found Pannell lying on the floor in blood with a .45 caliber gun by her side and Dix applying an ice pack to her head. Pannell was taken to the hospital in critical condition from

---

[1] The crimes occurred on March 22, 1994, and a grand jury indicted Dix on May 5, 1994. A jury found Dix guilty on January 5, 1995, and the trial court sentenced him to life imprisonment on the murder charge and five years on each possession charge. Dix filed a motion for a new trial on January 31, 1995, which was denied on March 4, 1996. He filed a notice of appeal on March 28, 1996. The case was docketed on May 16, 1996, and submitted for decision on briefs on July 8, 1996.

gunshot wounds to her head, back, and abdomen. At the hospital, she first told emergency room personnel and then repeated to a deputy sheriff that her husband shot her. She died four days later of complications from her brain injury. The pathologist who performed the autopsy ruled that her death was a homicide because of the number and location of the wounds, the paths of the bullets, and the distance of the gunshots from the body. At trial, Dix testified that the gun went off one time as he was pulling it from a table towards his own head, but he did not remember the two other shots. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Dix guilty of the crimes charged.[2]

2. OCGA § 24-3-1 (b) provides that hearsay evidence is admissible in "specified cases of necessity." The two requirements for the admission of hearsay under this exception are the unavailability of the declarant and a circumstantial guaranty of trustworthiness.[3] The issue here is whether the victim's statements to her divorce attorney provide sufficient evidence of trustworthiness to be admissible as an exception to the hearsay rule.

This Court has never considered whether a wife's statements to a divorce attorney about her husband's prior acts of violence should be admitted under the necessity exception. We have held that it was improper to admit a wife's hearsay declarations that she contacted an attorney about divorce proceedings because of her husband's violence and threats.[4] In that case, we rejected the argument that the testimony was admissible under OCGA § 24-3-2 to prove the wife's conduct in moving out of the house or to explain the husband's violent actions. More recently, we remanded a case for the trial court to consider whether statements that a crime victim made to a magistrate court clerk were admissible hearsay.[5] The clerk had testified at the husband's probation revocation hearing that the wife stated she was late in paying fines because she was in the hospital after her husband broke both her arms. Other states have reached contrary results concerning the admissibility of a victim's statements to her attorney about the defendant's violence during the marriage.[6]

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Swain v. C & S Bank*, 258 Ga. 547, 549 (372 SE2d 423) (1988).

[4] *Dover v. State*, 250 Ga. 209, 213 (296 SE2d 710) (1982), cert. denied, 459 U. S. 1221 (103 SC 1228, 75 LE2d 462) (1983).

[5] *Farmer v. State*, 266 Ga. 869, 871 (472 SE2d 70) (1996).

[6] Compare *State v. Beam*, 292 NW2d 302 (Neb. 1980) (admitting statements wife made to attorney because there was no apparent reason for her to falsify statements and ample reasons for truthfulness) and *State v. Kerkhove*, 423 NW2d 160 (S.D. 1988) (admitting wife's affidavit in divorce case relating to husband's physical violence during the marriage) with *Mutyambizi v. State*, 363 A2d 511 (Md. App. 1976) (holding prejudicial error to admit attorney's hearsay testimony that husband played Russian roulette with wife and held her at

Courts establish exceptions to the hearsay rule when the situation suggests that "a sincere and accurate statement would naturally be uttered, and no plan of falsification be formed."[7] There is nothing inherent in the attorney-client relationship that suggests a spouse will naturally utter a truthful statement in consulting an attorney about a divorce. Occasionally a client makes self-serving statements to his or her attorney and paints a picture of the marital relationship that is inaccurate and biased. Therefore, we decline to adopt a bright-line rule that any statement of a spouse to a divorce attorney about the marriage is admissible under the necessity exception to the hearsay rule. Rather, we look at the totality of the circumstances surrounding the making of the out-of-court statements to determine whether there is sufficient indicia of trustworthiness.[8]

In this case, attorney Stan Cox testified about three separate conversations in which his client mentioned Dix's violence. On the first occasion, Pannell told Cox that her husband had choked and threatened to kill her two days earlier. She refused to seek a court order restraining Dix because she "didn't want to rile him up and she wanted a simple divorce and get out of it." Because Pannell made these statements on the day she retained Cox before she knew whether her husband would contest the divorce or agree to a property division, there is insufficient indicia of reliability to admit her statements into evidence under the necessity exception. Their admission, however, was harmless since there was sufficient corroborating evidence of the same episode, including Dix's testimony that he shoved his wife on the bed in December.

Pannell made the remaining declarations after the divorce became final. When she visited Cox to pick up the final decree, she told her attorney that Dix had held a gun to her head and dry-fired it two or three times. Later she told Cox that "no piece of paper would stop him, nobody would stop him." Given that the divorce was final, the couple had no children, and they had amicably divided their marital property, Pannell had no apparent reason to lie and presumably gave an accurate statement of facts to her attorney. Therefore, we conclude that Pannell's statements to her attorney after the divorce was final were admissible under the necessity exception to the hearsay rule.

3. Having reviewed the record, we find no error in the remaining enumerations. The police had probable cause to arrest Dix at his former wife's house. At the time, the officers knew that the couple was

---

gunpoint and raped her).

[7] 5 John Henry Wigmore, Evidence in Trial at Common Law, § 1422 (James H. Chadbourn rev. ed. 1974).

[8] See *Roper v. State*, 263 Ga. 201, 202 (429 SE2d 668) (1993).

divorced, Pannell and Dix were alone in the house that night, and there was blood on the telephone and Dix's hands. In addition, the trial court did not err in admitting evidence of independent crimes that Dix committed against his first wife to show intent here in light of his claim that he shot Pannell accidentally. Finally, the trial court correctly refused to give a charge on voluntary manslaughter because there was no evidence to support the charge and it was not Dix's defense at trial.

*Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs specially and Carley, J., who concurs in Divisions 1, 3 and the judgment.*

HUNSTEIN, Justice, concurring specially.

I write specially because I cannot concur with all that is stated in Division 2 of the majority opinion. The majority opines that there is "nothing inherent in the attorney-client relationship" to suggest that a spouse will "naturally utter a truthful statement in consulting an attorney about a divorce" and then assumes that clients "often" make "self-serving" statements to an attorney about marital relationships. I disagree with the majority's cynical assumption and strongly reject the majority's intimation that victims' statements to attorneys about domestic violence should be treated as inherently untrustworthy unless a contrary conclusion is demonstrated by other evidence unrelated to the making of the statement.

The statements testified to by Cox were made by Pannell in the context of their attorney-client relationship. In considering the trustworthiness of such statements under the necessity exception to the hearsay rule, it has been recognized that

> [s]tatements made in the confines of the attorney-client relationship have a particular degree of reliability and trustworthiness. The client is presumed to be looking after her own interest by giving full and truthful information to her attorney.

*In re Sean H.*, 586 A2d 1171, 1175 (Conn. App. 1991). The Nebraska Supreme Court has analyzed the issue in greater depth. That court held that

> the statements of the decedent to the attorney were made in the course of a professional consultation for purposes of legal advice and possible litigation. Under such circumstances, it is reasonable to assume that an accurate statement of facts would normally be given. . . . There was no apparent reason to falsify any statement and ample reasons for accuracy and

truthfulness. The attorney who testified as to the statements made by the decedent was acting in the course of professional employment, was unacquainted with the declarant previously, was a disinterested witness, and can be assumed to have reliably reported the statements made. The evidence of all the surrounding circumstances tends to corroborate the veracity of the declarant's statements and to indicate the absence of incentives to speak falsely.

*State v. Beam*, 292 NW2d 302, 306 (Neb. 1980). The majority can cite no persuasive authority to the contrary as a review of *Mutyambizi v. State*, 363 A2d 511 (Md. App. 1976), the sole case cited by the majority that is consistent with its position, reveals only a bare conclusion with no analysis of the issue.

Accordingly, I reject the majority's position that there is "nothing inherent" in the attorney-client relationship that would support an assumption of trustworthiness. Instead, consistent with the courts in Nebraska and Connecticut, I would assume that a client's statements made in the course of the attorney-client relationship are trustworthy given the presence of ample reasons for her to be accurate and truthful, in the absence of any evidence to establish a reason for a declarant to falsify her statements. Such a conclusion would not involve adoption of any "bright line" rule inasmuch as a determination of the trustworthiness of a decedent's statements to her attorney will necessarily depend upon an examination of the facts surrounding those statements presented in every case.

Based on my review of the facts in the case under the standard set forth above, I concur in the majority's holding in Division 2 that Pannell's statements to her attorney were admissible under the necessity exception to the hearsay rule. I concur fully in Divisions 1 and 3.

DECIDED JANUARY 21, 1997.

*Joseph S. Rhymer*, for appellant.

*Alan A. Cook, District Attorney, Jeffrey L. Foster, Anne M. Templeton, Assistant District Attorneys, Michael J. Bowers, Attorney General, H. Maddox Kilgore, Assistant Attorney General*, for appellee.

