S99A0532. CLARK v. THE STATE.
S99A0533. STOREY v. THE STATE.
(515 SE2d 155)

BENHAM, Chief Justice.

Appellants were tried together and convicted of malice murder in connection with the death of 15-year-old Brian Bowling.[1]

---

[1] The victim suffered a gunshot wound to the head on October 18, 1996, and died the next day. In an indictment returned August 8, 1997, appellants were charged with malice murder and conspiracy to commit murder. Appellant Storey was additionally charged with involuntary manslaughter. Their joint trial commenced on January 12, 1998, and concluded on January 19 with the jury's return of guilty verdicts on the murder and conspiracy

The State presented evidence that Brian suffered a fatal gunshot wound to his right temple while in his bedroom in his parents' home in rural Floyd County. A .38 caliber handgun was found between Brian's feet. A neurosurgeon who treated Brian testified that his report of his examination of Brian did not mention finding a powder burn, often left by a gun fired in close proximity to skin, a fact he would have included had he found such a burn. The neurosurgeon also testified that the 45 percent angle of the bullet's entrance into the victim's head was "unusual" for a self-inflicted wound, as was the lack of powder burns.

It was undisputed that appellant Cain Joshua Storey, Brian's best friend, had entered Brian's room several minutes before the shot was fired, and those members of Brian's family who had seen Storey before he entered Brian's room described him as acting strangely and appearing nervous. After the shooting, Storey initially told Brian's family members that he "didn't mean to kill him," and that he "didn't mean for him to die." He then said that Brian had shot himself with a gun that Storey had brought to Brian's room, making Storey feel responsible for Brian's death. A hearing-and-speech-impaired man visiting the Bowling home the night of the shooting testified that he saw a man he later identified as appellant Darrell Lee Clark running away from the home immediately after the shot was fired. Family members who entered Brian's room after the shot was fired noticed that a plywood board normally positioned in front of Brian's broken window was out of place, and testified that Brian and his friends used the window as a means of ingress into and egress from Brian's room.

Through the testimony of a woman who hosted a party attended by both appellants three and one-half months after Brian's death, the State presented evidence that Storey had told the witness, in Clark's presence, that they were members of a gang called "Free Birds" and that they had shot Brian because he knew too much about their burglary of a safe. The party hostess also testified that she had learned in her Storey-Clark conversation that Brian had wanted to leave the gang and its activities. The witness stated that Clark told her he was present when Brian was shot, but that he had not pulled the trigger. The witness further testified that appellants told her the gang had rules promising death as punishment for a member who talked to

charges. Appellants were sentenced to life imprisonment for the murder conviction on January 27. Clark filed a motion for new trial on February 10, and amended it on September 30. Storey filed a motion for new trial on February 24 and amended it on October 5. The trial court denied both amended motions on October 28, and appellants filed separate notices of appeal on November 30. Their appeals were docketed in this Court on January 6, 1999, and oral argument was heard on March 15, 1999.

8

police. Through the testimony of Bowling family members and police investigators, the jury was informed that, a week before he died, Brian had talked with police, in Storey's presence, about the theft of a safe and its contents from Storey's father. At the time of Brian's conversation with the police, appellants Storey and Clark had been arrested for the theft of the safe, and the investigating officer described Brian's statement as useful to the investigation since it corroborated. Storey's statement which had implicated Clark as a participant in the theft of the safe.

1. The evidence summarized above was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellants were guilty of murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant Storey contends on appeal that the trial court erred in denying his motion in limine which sought to preclude the State from mentioning in its opening statement appellant Storey's admission to police that he had accidentally shot Brian.

"[T]he opening statement is of no small significance in that it outlines for the jury what a party intends to show at trial." *Sims v. State*, 251 Ga. 877 (3) (311 SE2d 161) (1984). The prosecutor is permitted to use the opening statement to set out what the evidence is expected to show (*Massey v. State*, 263 Ga. 379 (2) (434 SE2d 467) (1993)), and the remarks should be confined to a summary of what admissible evidence is expected to show. *Cargill v. State*, 255 Ga. 616 (21) (340 SE2d 891) (1986). It is improper for a prosecutor to refer in the opening statement to a defendant's incriminating statement prior to a *Jackson-Denno* hearing on the admissibility of the defendant's statement. *Brown v. State*, 250 Ga. 862 (2) (302 SE2d 347) (1983). In the case at bar, the trial court held a *Jackson-Denno* hearing in response to the motion in limine and ruled, prior to the prosecutor's opening statement, that Storey's incriminating statement was admissible. The fact that the trial court sua sponte revisited the issue several days after Storey's audiotaped confession was played for the jury and ruled the confession inadmissible as the product of a hope of benefit offered by the interviewing investigator, does not affect the fact that, at the time the opening statement was made, Storey's incriminating statement was admissible evidence expected to be presented to the jury. Compare *Alexander v. State*, 270 Ga. 346 (2) (509 SE2d 56) (1998) (where prejudicial portions of the prosecutor's opening statement were never backed up by evidence). The trial court did not err when it denied Storey's motion in limine.

3. A deputy county coroner who saw the victim's wound at the hospital and again at a funeral home testified at trial. After he admitted that he had never been allowed to give an expert opinion in court regarding the existence of gunpowder on a body, and that his

experience and training did not enable him to look at an object and give a scientific opinion whether gunpowder residue was present because examination by microscope was necessary, the trial court declined to certify the coroner as an expert witness. Instead, the deputy coroner was permitted to give his lay opinion, based on his familiarity with the appearance of powder burns on human flesh and his examination of the victim, to testify that he saw no visible powder marks on the victim which meant that the fatal shot had been fired from a distance of at least 12-18" from the victim's head.

Even if error, the admission of the deputy coroner's testimony was not reversible error as it is cumulative of the neurosurgeon's testimony that he found no powder burns on the victim, and of the testimony of the Crime Lab's firearms expert that gunpowder residue is not found on a target when the shot is fired from a minimum distance of three feet. See *Williams v. State*, 256 Ga. 655 (2) (352 SE2d 756) (1987).

4. Storey takes issue with the trial court's admission of evidence concerning the existence of a gang and the punishment for one who told police about the criminal activities of members. The State's theory in this case was that the victim and appellants were members of a gang and that the victim had been killed for talking to police about a crime members of the gang had committed. The State is authorized to present evidence of a defendant's motive for allegedly committing a criminal act. *Johnson v. State*, 260 Ga. 457 (2) (396 SE2d 888) (1990). When that motive directly involves appellants' membership in an unsavory group, the relevant and material evidence does not become inadmissible because it may incidentally put appellants' character or reputation into evidence. *Mize v. State*, 269 Ga. 646 (3) (501 SE2d 219) (1998) (evidence of Ku Klux Klan and National Vastilian Aryan Party membership admissible to establish motive); *Earnest v. State*, 262 Ga. 494 (1) (422 SE2d 188) (1992) (evidence of satanic cult membership admissible to establish motive).

5. Appellant Clark sees reversible error in the trial court's admission, under the necessity exception to the statute prohibiting the admission of hearsay evidence (OCGA § 24-3-1), of testimony concerning a statement made by the victim two months before his death. At trial, the victim's brother-in-law testified that Brian had told him that Brian and appellants were "in a gang called 'Free Birds'. . . ."

It is undisputed that the witness's testimony as to what Brian purportedly had said was hearsay, the admission of which is limited to specified cases of necessity. OCGA § 24-3-1 (b); *McKissick v. State*, 263 Ga. 188 (3) (429 SE2d 655) (1993). The two prerequisites for the admission of hearsay because of necessity are: a finding that the hearsay is necessary, and a finding that the declarant's hearsay statement is surrounded by particularized guarantees of trustworthi-

ness. *Mallory v. State*, 261 Ga. 625 (2) (409 SE2d 839) (1991). We recently held in *Chapel v. State*, 270 Ga. 151 (4) (510 SE2d 802) (1998), that the hearsay declarant's death or unavailability, in and of itself, does not satisfy the "necessary" component, implicitly overruling those cases which held otherwise. See, e.g., *Holland v. State*, 267 Ga. 833 (3) (483 SE2d 584) (1997); *Carr v. State*, 267 Ga. 701 (3) (482 SE2d 314) (1997); *Jordan v. State*, 266 Ga. 499 (3) (467 SE2d 568) (1996); *Luallen v. State*, 266 Ga. 174 (5) (465 SE2d 672) (1996); *Drane v. State*, 265 Ga. 663 (1) (461 SE2d 224) (1995); *Hayes v. State*, 265 Ga. 1 (3) (453 SE2d 11) (1995); *Hawkins v. State*, 264 Ga. 484 (2) (448 SE2d 214) (1994); *Roper v. State*, 263 Ga. 201 (429 SE2d 668) (1993); *McKissick v. State*, 263 Ga. 188 (3) (429 SE2d 655) (1993); *Nelson v. State*, 262 Ga. 763 (3) (426 SE2d 357) (1993); *White v. State*, 262 Ga. 168 (415 SE2d 467) (1992); *Mallory v. State*, supra, 261 Ga. at (2). See also *Suits v. State*, 270 Ga. 362 (2) (507 SE2d 751) (1998). To satisfy the requirement that the hearsay be "necessary," in addition to showing the hearsay declarant's unavailability due to death, privilege, or other reason, the proponent of the hearsay must also show "that the statement is relevant to a material fact and that the statement is more probative on that material fact than other evidence that may be procured and offered." *Chapel v. State*, supra, 270 Ga. at 155. The trial court's finding in the case at bar that admission of the hearsay was necessary is not error as the State established that the declarant was unavailable due to death; that his purported statement regarding gang membership was relevant to a material fact — the motive for the shooting; and that the most probative evidence of Brian's gang membership was Brian's admission of that fact.

After the completion of the three-pronged examination of whether the hearsay is "necessary," the trial court must then examine whether the hearsay statement is surrounded by "particularized guarantees of trustworthiness," that is, whether there is "something present which the law considers a substitute for the oath of the declarant and his cross examination by the party against whom the hearsay is offered." *Higgs v. State*, 256 Ga. 606 (3) (351 SE2d 448) (1987). Absent a showing of particular guarantees of trustworthiness or indicia of reliability, the proffered hearsay must be excluded from evidence. *Ohio v. Roberts*, 448 U. S. 56, 66 (100 SC 2531, 65 LE2d 597) (1980). In the case at bar, the trial court made no inquiry or finding concerning the particularized guarantees of trustworthiness necessary for the admission of the hearsay. However, the erroneous admission of the hearsay amounted to harmless error since establishing Brian's membership in the gang with appellants was admitted through the testimony of the party hostess. *Holland v. State*, supra, 267 Ga. at 837. See also *Dix v. State*, 267 Ga. 429 (2) (479 SE2d 739) (1997).

6. Over appellants' objections, the trial court permitted two women who had cleaned the Storey home to testify about the hand-written contents of a composition book they came across during their work, some six to ten weeks before Brian died. The book, on the cover of which was written "Free Birds," contained a list of names denoted as "members," which list included the victim and appellants, and "rules" to cover the behavior of the members.[2] One of the women, a relative of appellant Storey, testified she asked him about the book and he told her it belonged to another young man. The book itself was not offered as evidence, and the purported author/owner of the book did not testify. Appellants contended at trial and now on appeal that the testimony of the women regarding the contents of the writing was not the best evidence of the writing and was inadmissible hearsay.

The "best evidence" rule, embodied in OCGA § 24-5-4,[3] means that, when the contents of a writing are material, the original of the writing must be produced or its absence accounted for. Green, Ga. Law of Evidence (4th ed.), § 100. Secondary evidence of the contents of a writing will be admissible "if an original writing is properly authenticated, its existence and admissibility shown, and its absence accounted for. . . ." Rumsey, Agnor's Ga. Evid. (3rd ed.), § 13-8. See also OCGA § 24-5-25. In the case at bar, the secondary evidence was admitted without the proponent establishing the existence, admissibility and authentication of the composition book, and without accounting for the absence of the original. Compare *Summerour v. State*, 211 Ga. App. 65 (1) (438 SE2d 176) (1993). The secondary evidence offered, the testimony of the women, was hearsay (id.), and it was admitted without a determination that it fell within an exception to the rule prohibiting the use of hearsay. The erroneous admission of the women's testimony concerning the contents of the composition book is, however, made harmless by the testimony of the party hostess concerning gang membership and rules. *Holland v. State*, supra, 267 Ga. at 837; *Dix v. State*, supra, 267 Ga. 429 (2).

7. Seven months after Brian's death, a man contacted police and told them his speech-and-hearing-impaired brother had information about the shooting. Using his brother as an interpreter, the impaired witness told the investigating officer he had seen someone run by the

---

[2] Both women testified to the substance of some of the "rules" each saw listed in the composition book: "Never talk to [police]. Always stick up for your brother. Never do drugs. [I]f a brother is caught narcing on . . . another brother, the punishment's death."

[3] OCGA § 24-5-4 states:
(a) The best evidence which exists of a writing sought to be proved shall be produced, unless its absence shall be satisfactorily accounted for.
(b) Written evidence of a writing is considered of higher proof than oral evidence
. . . .

Bowlings' front window immediately after the fatal shot was fired. The officer left the witness and put together a six-photo lineup which he presented to the witness who, without waiting for further instruction from the officer, immediately selected appellant Clark's photo as depicting the man he saw running from the scene of the shooting. The witness later identified Clark at trial through a sworn and qualified sign language interpreter.[4] Appellant Clark contends the photo lineup was impermissibly suggestive, thereby tainting the witness's in-court identification of Clark, and appellant Storey maintains the witness's testimony should have been struck due to his inability to communicate.

(a) While the transcript reflects some difficulty in communicating with the witness, the witness answered the questions put to him through the interpreter. The credibility of the evidence elicited through the use of the interpreter was for the jury who observed the witness's behavior and responses. *Hensley v. State*, 228 Ga. 501 (1) (186 SE2d 729) (1972). The trial court did not err in denying the motion to strike the testimony of the witness.

(b) It is error to allow testimony concerning a pre-trial identification of a defendant if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Reid v. State*, 210 Ga. App. 783 (2) (437 SE2d 646) (1993). The taint which renders an identification procedure impermissibly suggestive must come from the method used in the identification procedure. *Sherman v. State*, 225 Ga. App. 869 (2) (485 SE2d 557) (1997). An identification procedure is impermissibly suggestive when it leads the witness to an "all but inevitable identification" of the defendant as the perpetrator (*Brewer v. State*, 219 Ga. App. 16 (6) (463 SE2d 906) (1995)) or, as was held in *Heyward v. State*, 236 Ga. 526 (224 SE2d 383) (1976), is the equivalent of the authorities telling the witness, "This is our suspect." See also *Hodnett v. State*, 269 Ga. 115 (4) (498 SE2d 737) (1998) (appellant did not show lineup was impermissibly suggestive when he failed to demonstrate how the lineup made him stand out from the other lineup participants in an arbitrary or apparent way).

A photocopy of the photo lineup displayed to the witness contains photos of six young, white males with shoulder-length hair and a moustache. Most of appellant Clark's grounds for finding the lineup impermissibly suggestive (the witness's difficulty in communicating and his use during the photo lineup of his brother as an interpreter;

---

[4] OCGA § 24-9-4 provides that "[n]o physical defect in any of the senses shall incapacitate a witness. An interpreter may explain the evidence of such witness."

the length of time between the shooting and the witness's report and the identification procedure; his acquaintance with the victim's family who was rumored to believe that Clark was involved in Brian's death) are not assertions that the identification procedure was impermissibly suggestive, but are factors which go to the credibility of the witness, or which go to determining whether there was a substantial likelihood of misidentification, undertaken only after it is determined that the identification procedure was impermissibly suggestive. See *Whatley v. State*, 266 Ga. 568 (2) (468 SE2d 751) (1996) (a court need not consider whether there was a substantial likelihood of misidentification if it determines that the identification procedure was not impermissibly suggestive). See also *Taylor v. State*, 232 Ga. App. 383, 385 (501 SE2d 875) (1998) (the difficulty a witness has in identifying at trial a suspect the witness selected in a pre-trial lineup goes to the credibility of the witness).

The only allegation which goes to the identification procedure itself is appellant Clark's assertion that the police officer who put the lineup together told the brother of the witness that he was going to put appellant Clark's photo in the lineup. The factual premise for the assertion is based on answers to defense counsel's questioning of the officer who presented the lineup to the witness. After the officer testified on direct examination that he had not indicated to either the witness or his brother that a photo of "the individual" was in the lineup, the officer several times gave an affirmative response to defense counsel's questions that he told the witness and his brother that he "would go fix a lineup with [appellant] Clark's picture in it, and . . . bring it back and present it to them." On re-direct and recross-examination, the officer could not recall giving the brothers the name of anyone he was going to include in the lineup.

Even if we were to assume from the officer's unclear testimony that he did mention appellant by name to the witness's brother who, in turn, relayed the information to the witness (there being no evidence of the latter fact), we find no error in the admission of the identification testimony. A police officer displaying a lineup to a victim or witness should avoid telling the person that the lineup contains the police officer's suspect. *Mitchell v. State*, 236 Ga. 251 (2) (223 SE2d 650) (1976); *Campbell v. State*, 228 Ga. App. 258 (2) (b) (491 SE2d 477) (1997); *Reid v. State*, 210 Ga. App. 783 (2) (437 SE2d 646) (1993). However, such a statement does not make a lineup impermissibly suggestive since the very fact that a lineup is being conducted suggests that a suspect is contained therein. Id. Accordingly, testimony concerning the pre-trial identification was not subject to suppression, and the in-court identification of appellant Clark by the witness was not the result of an impermissibly suggestive pre-trial identification procedure.

*Judgments affirmed. All the Justices concur.*

DECIDED APRIL 12, 1999.

*William R. Carlisle, Rex B. Abernathy, Frank D. Perry,* for appellant (case no. S99A0532).
*Larry J. Barkley,* for appellant (case no. S99A0533).
*Tambra P. Colston, District Attorney, C. Stephen Cox, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jeanne K. Strickland, Assistant Attorney General,* for appellee.